CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V.
L. W. HAGUE, EXECUTOR.

FILED APRIL 10, 1896.    No. 6382.

1. **Railroad Companies: INJURY TO PASSENGERS: RIGHT OF RECOVERY: PRESUMPTION OF NEGLIGENCE.** Under the provisions of section 3, article 1, chapter 72, Compiled Statutes, it is only necessary to a right of recovery against a railroad company to show that the person injured was, at the time, being transported as a passenger over the defendant's line of railroad, and that the injury resulted from the management or operation of said railroad. A presumption thereupon arises that such management or operation was negligent, and it can be met only by showing that the injury arose from the criminal negligence of the party injured or that it was the result of the violation of some express rule or regulation of said railroad company actually brought to the notice of the party injured. *Missouri P. R. Co. v. Baier*, 37 Neb., 253, followed.

2. **Criminal Negligence: DEFINITION.** Criminal negligence, as the term is used in the statute, means such negligence as amounts to a flagrant and reckless disregard of one's own safety, and the willful indifference to the injury liable to follow. *Omaha & R. V. R. Co. v. Chollette*, 33 Neb., 143, followed.

3. ———: **EVIDENCE.** Evidence examined, and *held* to so clearly disclose criminal negligence on the part of the person injured as to permit no reasonable inference to the contrary.

ERROR from the district court of Kearney county. Tried below before BEALL, J.

*J. L. McPheely, T. M. Marquett, J. W. Deweese,* and *W. S. Morlan,* for plaintiff in error.

*Stewart & Munger* and *L. W. Hague, contra.*

IRVINE, C.

This was an action under Compiled Statutes, chapter 21, by Hague, as executor of Robert P. Stein, deceased, against the Chicago, Burlington & Quincy Railroad Company, on account of injuries causing the death of decedent. The plaintiff had a verdict and judgment for $4,000.

11

The sufficiency of the evidence to sustain the verdict is presented for review by a direct assignment of error, and also by an assignment based on the refusal of the court to give an instruction directing a verdict for the defendant. In support of these assignments the railroad company contends, first, that the evidence does not in any manner tend to charge it with negligence; and secondly, that the uncontradicted evidence discloses that Stein was guilty of contributory negligence.

The first argument is completely answered by the uncontradicted proof that Stein was a passenger lawfully riding on a train of the railroad company when the injury was inflicted. Chapter 72, article 1, section 3, Compiled Statutes, provides: "Every railroad company, as aforesaid, shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the persons injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice." The railroad company contends that the phrase "damages inflicted upon the person of passengers" indicates that in order to charge the railroad it must appear that the injury was the result of some negligent omission or commission on the part of the railroad. This construction is not tenable. In *Missouri P. R. Co. v. Baier*, 37 Neb., 235, it was held that under this statute it is necessary to prove only that the injured person was a passenger being transported over the line of railroad of the defendant when damages were inflicted upon the person of such passenger; that proof of such facts raises a presumption of negligence on the part of the railroad company which can be rebutted only by proof of negligence on the part of the passenger, or the violation by him of some express rule or regulation of the railroad actually brought to his notice. This construction has been followed in *Union P. R. Co. v. Porter*, 38 Neb., 226, in *St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb., 448, and in other

cases, and it is undoubtedly correct. It was, therefore,. unnecessary for the plaintiff to prove that Stein's death was caused by any specific negligence on the part of the railroad.

We preface a consideration of the evidence with relation to the second argument with the remark that the case being within the statute, it was insufficient for the railroad company merely to establish such a degree of negligence on the part of Stein as would prevent a recovery in ordinary cases of personal injuries. The statute requires as a defense that the person injured should have been guilty of "criminal negligence." In *Omaha & R. V. R. Co. v. Chollette*, 33 Neb., 143, this court approved an instruction to the effect that criminal negligence, as the term is used in the statute, means gross negligence,— such negligence as would amount to a flagrant and reckless disregard of one's own safety, and a willful indifference to the injury liable to follow. In later cases the foregoing has been accepted as a correct interpretation of the statute. It must also be borne in mind that it is the settled law of this state that even where the facts are undisputed, the question of negligence is for the jury, where different minds may reasonably draw different inferences from those facts. This rule has been many times announced and was applied in *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 642, 39 Neb., 803, where the court examined the evidence in a similar case and held that it permitted no reasonable inference except that of criminal negligence on the part of the person injured. Therefore,. the question presented to us is not whether to our minds the evidence here discloses that Stein was guilty of criminal negligence as above defined, but rather whether under the facts disclosed any other inference is reasonable; if so, we cannot disturb the verdict. With these principles in view we pass to an examination of the evidence.

Stein lived at Minden. He boarded a west-bound freight train carrying passengers, at Hartwell, the first

station east of Minden, for the purpose of returning home. The passengers, including Stein, were in the caboose at the rear end of the train. The train arrived at Minden about 2 A. M. The night was misty and dark. About 1,300 feet east of the station at Minden there is a bridge some twenty feet high. Five hundred feet east of the station there is a switch leading to a side track. As the train approached Minden it stopped at such a point that the caboose stood upon the bridge. It seems that this stop was made for the purpose of taking the side track to permit a passenger train to pass; and that it was made at this point because the front end of the train was then at the switch. The passenger train not being due for about ten minutes, the interval was availed of for the purpose of uncoupling the engine and running it on to the station for water. This manœuvre left the caboose upon the bridge for several minutes; and during that period, while there is no direct evidence on the subject, it is quite clear from inference that Stein passed out the rear door of the caboose and fell to the ground beneath the bridge, probably in an attempt to alight from the train. The railroad company claims that the evidence shows that Stein had received and had understood an express warning that the caboose was on the bridge, and that he attempted to alight in spite of that warning. The plaintiff contends that on this point there was a conflict of the evidence, which must be resolved in his favor in accordance with the verdict of the jury. On the argument it was practically conceded that the question of contributory negligence turned on this point. The plaintiff frankly conceded that if Stein attempted to alight in spite of an express warning as to the situation of the caboose and the danger of the attempt, negligence on his part would be established. On the other hand, it was practically conceded that his attempt to alight, in the absence of knowledge on his part of the situation, would not present so clear a case as to justify the withdrawal of the issue from the jury. The conclusion we reach is

such that we may assume, for the purposes of this case, that the latter position is correct. There is no doubt that the conductor gave a general warning to the passengers not to get off, stating as a reason that the caboose was on a bridge; and our effort is therefore to ascertain whether or not there was a conflict in the evidence as to whether Stein understood this warning. If the evidence was conflicting, the finding of the jury for the plaintiff must on this branch of the case be taken as conclusive. There were in the caboose when the train stopped the conductor and five passengers. At the east, the rear end, was what is termed the "cupola." The conductor had been sitting in this. From this cupola west extended seats on either side, on which the passengers were sitting or reclining. Mr. Martin, one of the passengers, was not a witness. We have the testimony of the other passengers and of the conductor. The conductor was called by the defendant. He testified that when the train stopped he saw that he was on a bridge. He descended from the cupola and told the passengers that they were at Minden, but not to get out, as they were on a high bridge. Then he stepped to the east door and Stein stepped up beside him. Then he went to the west door. He then returned and reascended to the cupola, when he heard a groan and descending found that Stein was missing. Then comes this testimony:

Q. What, if anything, did you say to the passengers or to Mr. Stein before you went up in the cupola?

A. I told them not to get off; we was on a bridge.

Q. What, if anything, did Mr. Stein say to you?

A. He says, "Thank you, thank you." He thanked me two or three times. I do not remember just the words that he used.

This rather obscure testimony is much cleared up by the cross-examination:

Q. What did you say you did the first thing when the train stopped?

A. I was up in the cupola when the train stopped and I got down.

Q. At once?

A. Yes, sir.

Q. Then what did you do?

A. I told the people that we were at Minden, and not to get off; that we were on a bridge, and to wait until we got up to the depot.

Q. Then where did you go?

A. I walked to the east door.

Q. Did you stop there a while?

A. Yes, sir; probably half a minute.

Q. What part of the car were you in when you told the passengers not to get off?

A. Well, about the center of the car.

Q. You were not at the west door of the car when you said that?

A. No, sir.

Q. You did not go out the west door of the car after you said that?

A. Yes, sir.

Q. Not immediately?

A. No, sir.

Q. You went back to the east door?

A. First.

Q. And afterwards went out of the west door?

A. Yes, sir.

Q. How long did you say you staid at the east door?

A. Half a minute.

\*      \*      \*      \*      \*      \*      \*

Q. Mr. Stein spoke to you on the rear platform and thanked you—he thanked you some place for telling him that he was on a high bridge?

A. I say the east door. He thanked me first when I got down and thanked me a second time.

\*      \*      \*      \*      \*      \*      \*

Mr. Kelley, one of the passengers, says that his attention was first called to Stein when he noticed him standing in the middle of the car acting as if he was about to get out; that the conductor then told him that they were

not at Minden yet, but were on a bridge and would pull in on a side track to let an express go by; that Mr. Stein thanked him two or three times. The conductor then started for the front end of the car. Kelley does not know what then became of Stein.

The foregoing is the testimony on which the railroad ·company relies. Following is the testimony adduced by plaintiff and which he claims presents a conflict:

Mr. Smith says he was on the north side of the caboose, near the middle. When the train stopped, the conductor, preparing to go out over the train, said: "Don't get off; the caboose is standing on a high bridge." He was in the act of going out to the west when he said this. The witness was asleep and the words of the conductor awakened him. He thinks Stein also sat on the north side of the car and east of him. On cross-examination he says that when the conductor spoke he was just a few steps from the witness, and he thinks nearer the west end of the car than the center.

Mr. Johnson was on the south side of the car near the cupola. Mr. Martin, he says, was on the same side. Johnson also had been asleep. When he awoke the conductor was a short distance west of where he was lying. As Johnson awoke, the conductor made the remark which the other witnesses testify to. He then went out the west door. Another feature of the testimony of this witness is significant. When he awoke there were only two men on the north side. These were Smith and Kelley. Within a minute and a half of the time the conductor left the west door, Johnson saw someone go out the east door. This must have been Stein, although Johnson could not identify him.

The writer, after a somewhat careful examination of the evidence, was at first of the opinion that there was something of a conflict between the testimony of the conductor and Kelley on the one side, and that of Johnson and Smith on the other; and this because Johnson and Smith both seem to insist that the conductor's words

were spoken as he was in the act of passing out the west door, a fact inconsistent with the evidence as to the conversation with Stein, which, from the conductor's testimony, would seem to have occurred near the east door. Serious doubts having arisen, the evidence has been carefully re-examined, and we are now of the opinion that the testimony offered by the plaintiff in nowise conflicts with that offered by the defendant, to the effect that Stein heard the conductor's warning and thanked him for the information. While the language of Smith especially would indicate that the conductor gave the warning as he was passing out of the front end of the car, and immediately before he went out, on cross-examination he says, not that the conductor was at or near the west door, but that he was nearer the west door than the center of the car; but he also says that he was only a few steps from Smith. Kelley was between Smith and the west end of the car, so that his testimony in this respect is not materially different from that of the conductor and the other passengers who say that the conductor was about in the center of the car when he spoke. Now Smith says that Stein had been on the north side of the car and east of Smith, which would place three men on the north bench. Smith does not seem to have observed Stein at all after this stop was made. Johnson says that when he awoke there were only two men on the north bench and these were Smith and Kelley. Therefore Stein must have arisen from the north bench before Smith and Johnson awoke, and he must have been standing toward the east end of the car, or the other witnesses, who observed the conductor a little west of them, would have seen Stein also. Moreover, Johnson saw Stein go out the east door. The probabilities are that this movement would have been noticed by some of the other passengers if he had not been already near the east door and away from his seat when the others were awakened. Another fact is that Johnson and Smith both testify that they were asleep when the train stopped; and Smith's testimony

is positive that it was the conductor's voice, and not the stopping of the train, which awakened him. This would seem to be true also of Johnson, because as he awakened he saw the conductor west of him. The conductor had then descended from the cupola and passed westward before Johnson awoke. It is not unnatural that these two witnesses should not have observed or recalled such an incident as Stein's thanking the conductor for the warning, when it must have occurred as they were awakening from sleep. Finally, neither Smith nor Johnson was asked whether the incident with Stein did occur. If their testimony could be taken as denying its occurrence, it would be merely by inference from their relating what did occur, omitting this incident. They testified in chief before the conductor had testified or Kelley's deposition was read. Their attention was in nowise called to this conversation, and the case is, in that respect, far different from what it would have been if their attention had been directly called to it, and they had denied its occurrence. We think, therefore, that the testimony, without contradiction, shows, not only that the conductor gave the warning, but that it was understood by Stein; and if so, we think his act in attempting to leave the car in the face of such warning was so clearly and so grossly negligent as to permit no other reasonable inference to be drawn.

REVERSED AND REMANDED.