CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. ELIZABETH HYATT.

| 48 | 161 |
| 48 | 641 |
| 48 | 161 |
| 58 | 681 |
| 48 | 161 |
| 59 | 694 |

FILED APRIL 21, 1896.    No. 6462.

1. **Bill of Exceptions: ALLOWANCE BY CLERK.** The clerk of the district court is clothed with the power to sign and allow a bill of exceptions, when it is made to appear by affidavit that the trial judge is absent from his district.

2. **Judicial Districts: BOUNDARIES: EVIDENCE.** This court will take

judicial notice of the boundaries of a judicial district and of the counties included therein.

3. **Criminal Negligence.** It is the settled law of this state that the term "criminal negligence," as employed in section 3, article 1, chapter 72, Compiled Statutes, means gross negligence, such as amounts to a reckless disregard of one's own safety and a willful indifference to the consequences liable to follow.

4. **Railroad Companies:** INJURY TO PASSENGER: CONTRIBUTORY NEGLIGENCE. Where a passenger knowingly jumps from a moving train under such circumstances as to render the act obviously and necessarily perilous and to show a willful disregard of the danger incurred thereby, it will prevent a recovery for the injuries received therefrom. (*Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 642.)

5. ———: ———: DAMAGES: EVIDENCE. *Held*, Under the facts proven in the case, that plaintiff was not guilty of such negligence in alighting from a moving train as to defeat a recovery for injuries received therefrom. *Union P. R. Co. v. Porter*, 38 Neb., 226, followed.

ERROR from the district court of Lancaster county. Tried below before TIBBETS, J.

*T. M. Marquett, J. A. Kilroy,* and *J. W. Deweese,* for plaintiff in error.

*C. M. Parker* and *M. B. Reese, contra.*

NORVAL, J.

This was an action by Elizabeth Hyatt against the Chicago, Burlington & Quincy Railroad Company to recover damages for personal injuries received in alighting from defendant's train, in the town of Tamora, in Seward county. The jury found a verdict in favor of the plaintiff for $500, and also made and returned therewith the following special findings:

"1st. How long did the train stop at the station at Tamora at the time complained of?

"Answer. One and a half minutes.

"2d. How fast was the train running at the time the plaintiff got off the same?:

"Answer. About five miles an hour.

"3d. Did the conductor or any of the trainmen direct or request her to get off at the time she did, and after the train was in motion?

"Answer. No.

"4th. Did the plaintiff know that the train was in motion and running at the time that she came out onto the platform to get off, and about what part of the car was she in when she knew that the train had started to run again?

"Answer. Yes; near the center of the car.

"V. A. MARKLE,<br>"<em>Foreman.</em>"

Judgment was rendered for the plaintiff upon the general verdict, from which the railroad company prosecutes error to this court.

We will first give attention to the objection of the plaintiff to the consideration of the bill of exceptions, which was not signed and allowed by the trial judge, but by the clerk of the district court. The authority of the latter to sign the bill is now disputed. It has been frequently held that power is not conferred upon the clerk of the district court to settle a bill of exceptions, unless the trial judge is dead or is prevented from doing so by reason of sickness or absence from his district, or the parties to the suit or their counsel have agreed upon the bill and attached thereto their written stipulation to that effect. (*Scott v. Spencer*, 42 Neb., 632; *Glass v. Zutavern*, 43 Neb., 334; *Nelson v. Johnson*, 44 Neb., 7; *Yenney v. Central City Bank*, 44 Neb., 402; *School District v. Cooper*, 44 Neb., 714; *Martin v. Fillmore County*, 44 Neb., 719; *Griggs v. Harmon*, 45 Neb., 21; *Rice v. Winters*, 45 Neb., 517; *Mattis v. Connolly*, 45 Neb., 628.) The draft of the proposed bill was returned by counsel for plaintiff without any amendments being suggested, but neither the parties nor their attorneys agreed in writing to the bill. It was not, however, invalid for that reason alone. The clerk has the authority to allow and sign a bill of excep-

tions, even though it has not been agreed to by the parties to the litigation, where the judge is dead, or he is prevented by sickness, or absence from the district, from settling the bill. It is claimed that there is no showing that any one of these events has occurred. In this counsel for plaintiff are mistaken. There is attached to the bill the affidavit of J. W. Deweese, one of the defendant's attorneys, setting forth "that the Hon. A. S. Tibbets, judge of said court before whom the said cause was tried, is absent from the said county of Lancaster, and has been ever since the said bill of exceptions was returned by plaintiff's attorneys, and that said defendant is prevented by reason of such absence from having the bill settled and signed by the said judge," and praying that the clerk of the court may settle and sign the bill as provided by statute. The clerk in his certificate allowing the bill recites that the defendant had filed an affidavit setting forth the absence of the trial judge from the county of Lancaster. A lawful excuse was shown for not having the trial judge settle the bill, and such an excuse as justified the clerk in signing it. While it is true the statute specifies the absence of the trial judge from the district as a ground for the clerk allowing a bill, yet the showing in this record, that Judge Tibbets was absent from Lancaster county, the county in which the cause was tried, was sufficient to confer authority upon the clerk to act. This court will take judicial notice of the boundaries of the several judicial districts in this state, and in that way we know that during the entire pendency of this cause in the court below, and since, Lancaster county alone comprised the third judicial district. Judge Tibbets being absent from such county, he was likewise absent from said district, and therefore the clerk possessed the power to settle, allow, and sign this bill of exceptions.

On the 23d day of March, 1892, the plaintiff, then forty-six years of age and by occupation a dressmaker, after purchasing a ticket from Lincoln to Tamora, boarded a passenger train on defendant's road in Lincoln, taking a

seat near the center of the second day coach.  After the
train started her ticket was surrendered to the conductor
and a check was given her, which was taken up between
Seward and Tamora, when she was informed by the
brakeman, upon her inquiry, that the next stop was at
Tamora, her place of destination, and the station was
soon thereafter called by the brakeman.   The train ar-
rived at Tamora about 1:45 in the afternoon, making its
usual stop, and the plaintiff immediately went out upon
the platform of the car in which she was riding for the
purpose of getting off, but did not then do so, claiming
that the coach had not reached the station platform, and
that the ground in front of her was covered with running
water, which, together with the height of the car step
above the ground, prevented her from alighting.   Plaint-
iff thereupon, at the suggestion of a passenger, passed
rapidly through the first day coach, the car immediately
in front of the one in which she rode, in order that she
might alight on the station platform.   By the time she
reached the center of the car she ascertained that the
train was moving slowly towards the next station, yet
she hurried through the car, and on reaching the front
platform thereof she leaped or jumped off, spraining and
bruising her right ankle and foot.   It is on account of
this injury that she sues for damages.   The acts of negli-
gence alleged in the petition are as follows: "That upon
the arrival of said defendant's train at said town of
Tamora, which was her destination, and of which fact
she had been informed by the conductor of the train, the
said defendant stopped the said train before it arrived
at the depot or platform, which was more especially the
case of the car occupied by plaintiff;  that immediately
upon the arrival of said train the said plaintiff hurriedly
went to the platform to alight from said train or car,
when she found the steps of said car were so high from
the ground that it was impossible for her to alight from
said steps;  that the ground was so muddy that it was an
impossible and unfit place for her to alight;  that she then

hurriedly ran through the next car in front for the pur-
pose of alighting upon the platform prepared for that
purpose; that before she arrived at the front end of the
car referred to, which was the next immediately in front
of the one in which she was seated, the train had been
started and was in such rapid motion that in getting off
she was, by the motion of said car, thrown down and
seriously injured. Plaintiff further alleges that at the
time she alighted from said train, which was done in the
shortest time possible after the train was stopped, there
was neither brakeman, nor fireman, conductor, or train-
man there to assist her; that there was no trainman on
said platform nor anywhere in sight. Plaintiff alleges
that by the gross carelessness of said defendant, by its
wanton and gross negligence in stopping said train before
the car in which she was riding, and was compelled to
ride, on account of the crowded condition of the train,
before its arrival at the platform, and in not allowing her
sufficient time to alight from said train, and the gross
negligence of said defendant in not having some of its
assistants at their proper place to assist said plaintiff in
alighting from said train, and by reason of the fall as
above described, so received through the gross careless-
ness and negligence of said defendant, the plaintiff had
her right foot and ankle seriously sprained, bruised, and
injured." The answer denies all negligence of the de-
fendant, and alleges that the injury was caused by plaint-
iff's own carelessness and negligence, and without any
fault or want of care on the part of the company. The
reply put in issue the averments of the answer. The tes-
timony discloses that the train on which plaintiff took
passage stopped at Tamora the usual length of time, suf-
ficient to have allowed the plaintiff to alight had the car
reached the station platform. There is a conflict in the
evidence as to the exact place at which the train stopped.
That introduced by plaintiff tended to show that the car
in which she rode did not come up to the station platform,
and that the lower step of the car was about two feet

from the ground, which was entirely covered by water. The verdict being for the plaintiff, we must accept as true, although there is in the record evidence sufficient to sustain a different finding upon this point, that the company was guilty of negligence in not providing a suitable and convenient place for plaintiff to alight at the place she first made the attempt.

It is argued that plaintiff cannot recover because the injury inflicted was attributable to her own gross or criminal negligence. (Compiled Statutes, ch. 72, art. 1, sec. 3.) This section makes every railroad company the insurer of the passenger's safety, "except in cases where the injury done arises from the criminal negligence of the person injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice." The term "criminal negligence," as above employed, has been defined to mean "gross negligence, such as amounts to reckless disregard of one's own safety, and a willful indifference to the consequences liable to follow." (*Omaha & R. V. R. Co. v. Chollette*, 33 Neb., 143; *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 642; *Missouri P. R. Co. v. Baier*, 37 Neb., 236; *Chicago, B. & Q. R. Co. v. Hague*, 48 Neb., 97.) In the case at bar the evidence shows that the plaintiff received her injury by jumping from a train while in motion. It is not *per se* gross negligence for a passenger to alight from a moving train. (*Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 643.) Whether to do so constitutes such negligence as will defeat a recovery for injuries received is for the jury to determine, under proper instructions, from a consideration of all the evidence in the case. A passenger might be fully justified in jumping from a moving train to escape a threatened collision (*St. Joseph & G. I. R. Co. v. Hedge*, 44 Neb., 448), and there are other instances or circumstances, doubtless, where a passenger would not be held guilty of gross or criminal negligence should he alight from a car while in motion in order to escape apparent imminent danger.

So, too, a passenger, under certain circumstances, may be warranted in getting off a train while slowly passing a station. (*Union P. R. Co. v. Porter*, 38 Neb., 226.) As said before, whether a plaintiff in any case is guilty of criminal negligence is purely a question of fact for the jury; but the finding upon that, like every other issue of fact submitted to a jury, must be based upon the testimony, otherwise it will be disregarded by the reviewing court. This brings us to consider whether this plaintiff was guilty of such negligence as will prevent a recovery.

It is the duty of a railroad company to provide a suitable and safe platform or place for the exit of passengers at each station, and to stop its cars in proper position and for a sufficient time for them to alight with safety, and if it fails to do so it is guilty of negligence. According to plaintiff's testimony, the car in which she rode, and from which she first made the attempt to get off, stopped before it reached the station platform, and the ground at that place was inundated with water, hence she was not required to alight there. Discovering the situation, she hurried through to the next car in front, in order that she might reach the depot platform, and succeeded in getting off before the platform had been passed. The train was not moving rapidly at the time, not faster than a person can walk. The undisputed evidence shows that it had not yet moved the length of two cars after starting, and, therefore, it is not probable that the train in that distance could have acquired the speed found by the jury. A careful reading and analysis of the testimony fails to disclose that plaintiff, in alighting under the circumstances, was guilty of gross negligence. She was fully justified in believing that she ran no risk of injury in stepping off the car. The case is analogous in its principal facts to *Union P. R. Co. v. Porter*, 38 Neb., 226, where a judgment for Porter was affirmed. The case at bar is distinguishable from *Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb., 643. There the plaintiff jumped from a rapidly moving train under such circumstances as to render the

act obviously and necessarily perilous, and such as showed a flagrant and reckless disregard of the passenger's own safety, and a willful indifference to the injury liable to follow.

Complaint is made of the refusal of the court to give the six instructions requested by the company, but they are not argued in the brief. These requests, so far as applicable, are fully covered by the charge of the court.

JUDGMENT IS AFFIRMED.