UNION PACIFIC RAILROAD COMPANY v. OSCAR ROESER, ADMINISTRATOR OF THE ESTATE OF NIELS RASMUSSEN, DECEASED.

FILED MAY 20, 1903. No. 12,235.

1. **Lord Campbell's Act: PLEADING.** In an action by an administrator for damages for causing the death of his intestate, it is proper to allege such facts as will show a pecuniary loss to the next of kin.

2. **Demurrer.** In such action the petition is not demurrable because it alleges a contract to support the next of kin made by the deceased in his lifetime, without alleging that the estate of the deceased is insufficient for that purpose.

3. **Contributory Negligence.** If a passenger on a steam railroad extends his person through the window of the car of a rapidly moving train in which he is riding, he is chargeable with such gross negligence as will prevent a recovery of damages for an injury to which such act on his part contributes.

ERROR to the district court for Hall county: JOHN R. THOMPSON, DISTRICT JUDGE. *Reversed.*

*W. R. Kelly, John N. Baldwin, Edson Rich* and *W. H. Platt,* for plaintiff in error.

*R. R. Horth, contra.*

SEDGWICK, J.

The plaintiff, as administrator of the estate of Niels Rasmussen, deceased, brought this action against the railroad company to recover damages for the death of Niels Rasmussen, suffered by injuries received while a passenger from Grand Island to Omaha on one of the defendant's trains. It was at Chapman that the accident occurred.

The train did not stop at this station but maintained its speed of about forty or forty-five miles an hour. In passing this station, deceased raised a window and saluted an acquaintance on the station platform. He extended his head and right shoulder outside of the window and was waving his hand toward his acquaintance, until the train passed the station about two hundred feet, when he was struck just above the left ear by an iron ring, about fifteen inches in diameter, which was suspended from a crane and holding a mail sack. His skull was broken by the blow, from which he died the following day.

The plaintiff recovered a judgment in the court below, which the company has brought to this court for review.

1. The first contention is that the petition does not state a cause of action, because it does not contain the necessary allegation under our statute allowing pecuniary damages to the next of kin. The ground of this contention appears to be, that the petition alleges that prior to his death the deceased had entered into a contract with his parents by which he was bound to support them, and since this contract would be enforceable against his estate, and there is nothing in the petition to show that the estate is not ample for that purpose, the plaintiff can not recover in this action. The petition contains an allegation that the deceased promised his parents to support them, and that this promise induced them to come to America to live, and that the parents were depending upon the deceased for the support so promised. It may be that some of the allegations of the petition in this connection were irrelevant and might have been striken out upon motion. It is proper in such a case to allege such facts in the petition as will show a pecuniary loss to the next of kin, and some of the allegations complained of were necessary and proper for that purpose. The petition shows that the father is the next of kin of the deceased and contains the necessary allegation to enable the administrator to maintain this action in his behalf.

2. It is complained that the court erred in admitting evi-

dence that the parents came to this country at the request of the deceased and relying upon his promise to assist them. It is urged that if the action is based upon our statute such evidence was immaterial and might have a prejudicial influence upon the jury in estimating the amount of damages, and that if the action is based upon the contract of the deceased with his parents then no recovery is allowable.

No recovery can be had under our statute except for pecuniary damage. The value in money of the life of one person to another person can not be determined by mathematical calculations from fixed rules. It is a matter to be estimated from all the conditions existing and surrounding circumstances, and is peculiarly within the province of the jury. The evidence in question tended to show that the parents were likely to have received substantial assistance from the deceased had he lived, and were proper for the jury to consider in arriving at a reasonable estimate of the pecuniary loss. The father was the next of kin under the law and the duty of supporting the mother devolved upon the father. Contributions to support the mother would be a pecuniary benefit to the father, which the jury might also consider in determining the father's damage by the death of his son.

3. The principal question in the case is, whether the act of the deceased was, under the circumstances, such negligence on his part as will prevent recovery. It appears to be conceded that the company was guilty of negligence which directly contributed to the accident. The injury was caused by a heavy iron ring suspended from a crane which was used to enable trains when passing at full speed to receive or deposit sacks of mail. The post from which it was suspended was set a distance of about three feet from the side of a passing car and when not in use the iron ring was about eight feet from the car, but when placed in position so that the mail sack could be taken from the passing train this ring was about eight and one-half inches from the car. The train in which the deceased was riding was not a mail train, but the company's agent

in charge of the apparatus, from some mistake not explained, turned the crane and prepared the mail sack so that it might be taken by this train. But for this mistake of the company's agent the accident could not have occurred, so that, the negligence of the company being established, the question, as above suggested, is, whether the act of the deceased was of such a nature as to prevent the recovery.

4. It is generally held to be negligence *per se* and to be so declared as a matter of law, for a passenger on a steam railway to voluntarily protrude his person through the window of a car while in motion and beyond the line outside of the car. The law requires railway carriers of passengers to exercise extraordinary diligence to accomplish the safe carriage of passengers so far as human skill and foresight can secure that result. But railways must construct and arrange their tracks, stations, grounds and equipment, and operate their trains to attain practical purposes in the transaction of their business. They have not been restrained from constructing tracks with switches in close proximity with each other when necessary. These and other conditions of a similar character justify the general conviction that the only place of reasonable safety for passengers is within the cars.

In *Georgia P. R. Co. v. Underwood,* 90 Ala. 49, 8 So. 116, the supreme court of Alabama, by Judge McClellan, after citing a large number of cases which adhere to the above principle, say :

"Against this array of adjudged cases, and to the converse of the proposition stated, there is believed to be in reality but one authority. That is the case of *Spencer v. Milwaukee & P. du C. R. Co.,* 17 Wis. *487, which takes the position, and supports it with vigor, that it is not negligence *per se* for a passenger to project his arm out of the window of the car in which he is riding. Another case frequently cited and relied on to support this view is that of *Chicago & A. R. Co. v. Pondrom,* 51 Ill. 333. The conclusion in that case, however, was rested on the doctrine of

comparative negligence—a doctrine which, if not peculiar to Illinois, certainly is not recognized in our jurisprudence; and while the protrusion of the passenger's arm from the window of a moving car was admitted to be negligence, the judgment was allowed to stand because plaintiff's negligence was held to be *less* than that of the defendant." He then reviews the authorities and says:

"We are, however, satisfied with the rule as formulated and supported by the great number of adjudged cases, and the texts to which we have referred. The reasons upon which they base the doctrine appear to be eminently sound. Windows are not provided in cars that passengers may project themselves through or out of them, but for the admission of light and air. They are not intended for occupation, but for use and enjoyment without occupation. No possible necessity of the passenger can be subserved by the protrusion of his person through them. Neither his convenience nor comfort requires that he should do so. It may be, doubtless is true, that men of ordinary prudence and care habitually lean upon, or rest their arms upon the sills of windows by which they ride. But this is a very different thing from *protrusion beyond* the outer edge of the sills, and beyond the surface of the car. We can not concur in the assumption of the Wisconsin court that prudent men are habitually given to thus projecting themselves from the windows of moving trains."

The plaintiff does not contend that this is not a correct statement of the law. In his brief he says:

"We have not to deal with the question, was Rasmussen guilty of a want of ordinary care? But rather does the petition disclose such conduct on his part as amounted to a reckless disregard of his own safety and the wilful indifference to the consequences liable to follow?"

This presents the real question with which we have to deal. Admitting that the act of the deceased was negligent and that his negligence contributed to the accident so that it could not have occurred without this contributory negligence, was this negligence on his part of such character

as would prevent a recovery in this case? Our statute provides (Compiled Statutes, chapter 72, article 1, section 3; Annotated Statutes, 10039) :

"Every railroad company, as aforesaid, shall be liable for all damages inflicted upon the person of passengers while being transported over its road, except in cases where the injury done arises from the criminal negligence of the person injured, or when the injury complained of shall be the violation of some express rule or regulation of said road actually brought to his or her notice."

The purpose and meaning of this statute has long been settled in this state. In *Omaha & R. V. R. Co. v. Chollette*, 33 Neb. 143, the court, speaking by Judge Maxwell, approved an instruction in the following language:

"The term criminal negligence, as it is used in the statute above quoted, is defined to be gross negligence. It is such negligence as would amount to a flagrant and reckless disregard of her own safety and amount to a wilful indifference to the injury liable to follow."

This instruction was approved and followed in *Missouri P. R. Co. v. Baier*, 37 Neb. 235, where it was said:

"The purpose of the statute was not to fasten upon a common carrier of passengers a liability as insurer against any and all injuries while being transported upon the trains of such carriers, but it was rather intended to establish a presumption from the passenger receiving injury under the circumstances contemplated."

And in *Clark v. Zarniko*, 106 Fed. 607, the United States circuit court of appeals adopted and applied this as the proper construction of the statute. The court said:

"The supreme court of Nebraska has defined the term 'criminal negligence' in this statute to be gross negligence; such negligence as would amount to a flagrant and reckless disregard of one's safety, or to a wilful indifference to the injury liable to follow. It has also declared that the purpose of the statute was not to fasten upon a common carrier of passengers a liability as insurer, but that it was rather intended to establish a presumption from an

injury to a passenger that the damages inflicted by such injury were entirely attributable to the negligence of the railroad company, and that to avoid liability it devolves upon the company to show that the injury was imputable to the criminal negligence of the party injured, or to his violation of some express rule or regulation of the road actually brought to his notice."

Other decisions of this court have recognized this as the true meaning of the statute. It is difficult to see what other force can be given to the word "criminal." It has no well defined legal meaning in such connection. It occurs, so far as the writer is aware, in no other similar statute in this state or elsewhere.

Such recklessness as is incompatible with a proper regard for human life is negligence which will render unintentional homicide criminal. 1 McClain, Criminal Law, sec. 350. Gross negligence is criminal negligence as the word is used in the statute. A reckless, that is, without thought or care, disregarded of one's own safety or a wilful indifference or intentional disregard of the consequences liable to follow is criminal negligence when accompanying the intentional doing of an act incompatible with a proper regard for one's own life. The act of the deceased was in no way related to the duty of the carrier to its passengers; it was not necessary to his convenience or comfort as a passenger. He was provided with a place to ride in safety within the car. It is known to every passenger of ordinary intelligence that, on account of passing trains on adjacent tracks, and other causes continually existing in the operation of the road, a slight extension of the human body beyond the side of a moving car is done with danger to life and limb.

"These conditions have always existed. They are customary and to a large extent indispensable. * * * The customary methods of constructing tracks, building bridges and running trains in railroad yards renders any exposure of a person beyond the car line imminently hazardous." *Benedict v. Minneapolis & St. L. R. Co.*, 86 Minn. 224, 57 L. R. A. 639.

The deceased being an ordinarily intelligent young man knew this, and without any necessity whatever for so doing he elected to take the risk.  The act, conceded to be negligent, it is clear was done knowingly and intentionally without heeding the consequences, and constitutes such gross negligence as will defeat a recovery.

The judgment of the district court is reversed and the cause remanded.

Reversed.

Sullivan, C. J., dissenting.

I am not prepared to agree to the proposition that Rasmussen's act in protruding his head from the car window was so clearly an act of criminal negligence that reasonable men might not differ with respect to it.  What he did was, I think, nothing more than people generally do under like circumstances.  His conduct was the product of a sudden impulse—the spontaneous expression of an emotional nature.  It was not, of course, prudent conduct; calculation and provident foresight were wanting, but it did not amount to a flagrant or reckless disregard of the consequences which were certain or likely to ensue.  Risk was incurred, but from the standpoint of a person who knew nothing about the appliance that caused the accident, it was a slight and not a serious risk.  It was hardly sufficient, taking human nature as it is, to impose restraint upon the social instinct which prompts one to give greeting to a friend.  In dealing with cases of negligence, judges are, I am disposed to think, too much inclined to take themselves as standards by which to measure the conduct of all classes and conditions of men.  Commensurate care in a given case is apt to be what they would have done.  They are accustomed to travel and understand the dangers of the road; they are unaffected by novel situations; their native enthusiasm has been chilled by contact with the world; they hold themselves in leash and wave no improvident salutations to acquaintances or friends.  They are well-poised, circumspect and deliberate; they

are exemplars of correct conduct, but, however much it is
to be regretted, their ways are not the ways of ⌐xultant
youth nor of "the man with the hoe." In my opinion *Chicago, B. & Q. R. Co. v. Martelle,* 65 Neb. 540, went too far,
but this case goes still farther. Carriers of passengers,
as was observed in *Chicago, R. I. & P. R. Co. v. Zernecke,*
59 Neb. 689, are insurers; they charge for the risk they
assume and there is consequently no reason why the law
imposing liability upon them should be enforced with reluctance. In actions brought to recover indemnity courts
have, it seems to me, no call to put a harsh construction
upon the plaintiff's conduct in order to temper the statute
with natural justice. Criminal negligence, as the term
is used in section 3, article 1, chapter 72, Compiled Statutes (Annotated Statutes, 10039), means such negligence
as amounts to "a flagrant and reckless disregard of one's
own safety, and the wilful indifference to the injury liable
to follow." *Chicago, B. & Q. R. Co. v. Hague,* 48 Neb. 97.
It is true that in the case cited it was held that the act of a
passenger, who, after he had been expressly warned that
the freight caboose, in which he was riding, was standing
on a high bridge, and that he must not attempt to leave
the car, stepped off at the rear and fell, receiving injuries
from which death resulted, was "criminal negligence." In
the next case, *Chicago, B. & Q. R. Co. v. Hyatt,* 48 Neb.
161, criminal negligence is defined as "gross negligence
such as amounts to a reckless disregard of one's own
safety and a wilful indifference to the consequence liable
to follow," and in that case the action of the plaintiff, in
jumping from a moving train, was held not to be such negligence, and the case was distinguished from *Chicago, B.
& Q. R. Co. v. Landauer,* 36 Neb. 642, because in the latter
case the train was moving rapidly and the act of jumping
off was obviously and necessarily perilous and showed a
wilful disregard of the injury which was liable to follow.
In the *Chollette* case it was held that the question of negligence in stepping off a moving train was properly left
to the jury, and the judgment against the company was

affirmed. A great many cases, including the foregoing, are cited by plaintiff in error in its elaborate brief, but it is conceded that the definition of "criminal negligence" in *Omaha & R. V. R. Co. v. Chollette*, 33 Neb. 143, 147, has been followed ever since. Some of the cases cited from other jurisdictions hold that the placing of the passenger's person outside the window of a moving train is evidence of negligence; some that it is conclusive evidence of negligence; and some that under the particular circumstances indicated, it is gross negligence; but none of them have any relation to the interpretation of that Nebraska statute which makes the carrier an insurer of its passenger against injuries inflicted upon him while he is such, unless such injury arises from his own "criminal negligence" or from "violation of some express rule or regulation of the road," brought expressly to his attention. It is not thought that any of these cases furnish any precedent for the determination of this one. None of the circumstances, under which the courts have held that the mere fact of placing a part of the person out of the window of a moving train is gross negligence, appear here. The injury was caused by a heavy iron ring suspended on a crane for the delivery of a mail-sack to and the reception of one from another corresponding crane on a moving train. The appliance, which seems to be no longer in use, was called "The Fleming Mail Catcher and Deliverer Crane." It is not necessary to describe it further than to say that by means of a post set at a distance of about three feet from the side of a passing car, and a swinging arm attached to the post, an iron ring could be let down to come within eight inches of a passing car to be there caught by a like arm extending from the mail car, and the ring and mail bag drawn on board the car without stopping the latter. The machine was not of a kind to attract the notice of a traveler, as when not in use the swinging arms were drawn up and when properly in use and the arms drawn down, they would be caught and thrown up by the crane on the mail-car before the passenger coaches came by.

The train on which the plaintiff's intestate was riding carried no mail and, if his attention had been called to the matter, he would have naturally supposed that the crane was drawn up properly and no ring in dangerous proximity to the train window, but there is nothing to indicate any knowledge on his part of the presence of the ring or of anything to warn him that his conduct was more dangerous than it would be on the open prairie. It would seem, therefore, that his conduct was not the "criminal negligence" necessary to relieve defendant from its statutory liability for the safety of its passengers.

Plaintiff in error cites Anderson's definition for gross negligence: "The omission of that care which even inattentive and thoughtless men never fail to take of their own property or interests." It is defined in Black's Law Dictionary as: "The want of that care which every man of common sense, how inattentive soever, takes of his own property. The omission of that care which even inattentive and thoughtless men never fail to take of their own property." The last sentence is also Bouvier's definition, citing Jones, Bailments.

Beyond doubt, the question here, as in the case of *Chicago, B. & Q. R. Co. v. Hague, supra,* is not whether this act of Rasmussen in putting his head out of the window seems to this court to be gross negligence, but whether it was so manifestly of that character that reasonable men can not deem it anything else. I am entirely unable to say so, and am unable to say on this ground either that there is no cause of action in the petition, or that none is proved by the evidence.