FRED FOLLEY, *a minor by his next friend Nannie Staples* v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY.

(Filed September 7, 1905.)

1. COMMON CARRIER—Authority of Conductors—Trespassers. A conductor of a freight train has the authority to remove trespassers from his train, but in the exercise of such duty must not wantonly or wilfully cause any injury to such trespasser; if he does, his master will be liable.

2. VERDICT—Error to Direct, When. Where there is positive testimony upon both sides of a material issue, and such question cannot be determined without weighing the testimony and determining the credibility of the witnesses, it is error for the court to direct a verdict.

3. COMMON CARRIERS—Trespassers—Negligence. Where a fifteen year old country boy, belonging to the colored race, who is ignorant of the means and manner of operating and managing railroad trains, goes upon a freight train at the direction of a brakeman and without right, such person is a trespasser, and the conductor may lawfully expel such boy from the train, but if such conductor in the exercise of such authority, while the train is moving at a rate of speed rendering it dangerous to get off, by threats of violence and show of force, causes such boy to alight from the moving train and injury results, such acts of the conductor under such circumstances constitute gross negligence, or wanton and wilful carelessness, and the railway company will be liable for the resulting injuries.

(Syllabus by the Court.)

*Error from the District Court of Kingfisher County; before Clinton F. Irwin, Trial Judge.*

*Stevens & Miller*, for plaintiff in error.

*M. A. Low. Blake, Blake & Low,* and *J. C. Robberts,* for defendant in error.

Opinion of the court by

BURFORD, C. J.: The plaintiff, Fred Folley, a minor, by his next friend, brought his action in the district court of Kingfisher county against the Chicago, Rock Island and Pacific Railway Company to recover damages for personal injuries alleged to have been caused by being ejected from a freight train. It is averred in the petition substantially that on the 31st day of May, 1899, the plaintiff, who was a boy under sixteen years of age, and wholly inexperienced and ignorant of the manner in which railroad trains were managed and operated, and of the difficulty or danger of alighting from a train while in motion, boarded one of defendant's freight trains at the town of Hennessey, a station on defendant's railroad, and entered the caboose which was scheduled and advertised to carry passengers. That after said train had started and was moving at the rate of about six miles an hour, the servants of the defendant company recklessly, wantonly, wilfully and purposely compelled plaintiff to alight from said train by threatening to knock him off the car, and believing that said servants would execute such threat, and forcibly and violently throw him from said train, he, in as careful a manner as was possible in obedience to the orders of said servants, did alight from said train, and attempted to land upon the depot platform from which the train was then passing, but that he was thrown down by the violence of the motion of the train and under the wheels of the moving cars, and was mangled, wounded and bruised, and one leg was so crushed and mangled as to make amputation necessary, and he was otherwise permanently injured, and suffered great pain and agony.

The defendant corporation answered by general denial, and also by a special plea, in which it is alleged that the plaintiff was a trespasser at the time of the accident, and that his injuries are the result of his own carelessness. The cause was tried to a jury, and after both parties had introduced evidence and rested, the court on motion of the defendant directed the jury to return a verdict for the defendant. The judgment followed the verdict, and the plaintiff appeals.

The action of the court in directing a verdict for the defendant is complained of as erroneous.

There was no controversy about the injury of the plaintiff, or the time, place and manner of its infliction. The plaintiff was on the front end of the caboose, which was the rear car of a local freight train headed south; when the train pulled out from the station at Hennessey, the caboose was several hundred feet north of the depot; as the train passed the depot platform, the plaintiff was on the front platform of the caboose, and when near the south end of the platform, and while the train was moving south at a speed of from ten to twelve miles per hour, jumped from the front end of the caboose onto the platform, and held onto the platform or car irons, and was thrown down and fell to the ground between the outer end of the platform and the passing caboose, and was crushed either by the trucks or steps of the caboose. A number of persons saw the accident, and while no two of them describe the details exactly alike, they all agree upon the general features.

The plaintiff testified that he got on the car at the invitation of a brakeman who was one of the crew operating this train, and who had told him that if he would help unload

some freight he would let him ride. That he did help with the work, and was told by the brakeman that they were ready to start, and to get on. That he got on the platform at the front end of the caboose, and was standing there when the car approached the depot platform; that the conductor boarded the train at the same end of the car, and immediately in a gruff manner, ordered him to get off or he would kick him off; that the conductor was a large man, and fearing he would throw him off he undertook to get off on the depot platform, and met with the injuries complained of.

The defense introduced the evidence of several witnesses who testified that the conductor was not on the front platform of the caboose at the time the plaintiff claimed he was ordered off the train. The question as to where the conductor was at the time, and as to whether the plaintiff was threatened or ordered off the train by any person, were controverted questions of fact, upon which there was positive testimony on both sides. Under such a state of the evidence, was it error for the court to direct a verdict?

Under the allegations and testimony of the plaintiff, it must be conceded that the plaintiff was a trespasser, and not entitled to the high degree of care to which a passenger is entitled. This court held in the case of *A. T. & S. F. Railroad Co. v. Johnson,* 3 Okla. 41, that a person who gets upon a railroad train without the knowledge or consent of the conductor, but under an agreement with the brakeman of the train, does not thereby contract for his passage, and is a mere trespasser, yet he has the right to be exempt from wanton and wilful injury at the hands of the railway company. It is contended by counsel for defendant in error, that in order for the plaintiff to be entitled to have his case go to the jury, it was

incumbent on him to show that the conductor had been given authority by the company to put him off the train. Of that which is a part of the common knowledge and experience of all persons of average intelligence, courts and juries will take judicial knowledge, and it need not be proven. The manner of operating and managing railway trains has been in general use now for many years, and has become a part of the general knowledge common to all people of average experience. A conductor has charge of his train, and of those who assist him in operating it; he has the power, and it is his duty, to eject persons who refuse to comply with the reasonable rules of the company; he has the right, and it is his duty, to eject trespassers from trains in his charge, and he may in the proper manner, at the proper time and in the proper place, resort to such reasonable force as may be necessary to compel trespassers to alight from the train in safety; and when it is shown that a conductor of a train has ejected a passenger or trespasser, his authority to perform such duty will not be questioned. His right to do so under the facts of the particular case is a proper subject of inquiry. These principles are fundamental, and need no citation of authority. Whether the person whom the plaintiff testified was the propelling cause of his hasty and unfortunate exit from the train, was or was not the conductor, was a controverted question, which could only be determined by weighing the testimony, and determining the credibility of the witnesses. This is the sole province of the jury. This leads us to the inquiry whether the plaintiff was entitled to recover, if his own testimony is conceded to be true. If he is not, then there was no error in directing a verdict. The plaintiff was a trespasser, and only entitled not to be wilfully or wantonly in-

jured. Was the command of the conductor, given in an angry manner, for him to get off or he would kick him off, sufficient inducement to impel the plaintiff to take the risk of alighting from a moving train? The general rule is that if one voluntarily attempts to alight from a moving train and meets with injury he cannot recover. His own negligence has contributed to his injury, and he will not be heard to complain of the negligence of the other party. But what rule have the courts laid down for the guidance of trespassers who act under fear induced by threats to do bodily harm or injury?

A similar question was before the supreme court of Kansas in the case of *Kansas City, Fort Scott and Gulf Railroad Company v. Kelley*, 36 Kan. 655, 14 Pac. 172, and it was there said:

"Assuming that the brakeman had authority to put trespassers off the train in a lawful manner, yet defendant insists that if the act was done as the plaintiff claims, and the boy was forced off the train while it was running at a speed of eight miles per hour, on a dark night, it cannot be said that the brakeman was acting, in so doing, under the scope of his employment so as to make the company liable. In this the defendant is mistaken. Assuming the case made by the plaintiff, the act complained of was reckless, wanton, and illegal; and, if done within the scope of his employment and authority, he was acting for the defendant, and not for himself. The removal of trespassers from the train was within the implied authority, and became the duty of the servants in charge of the train; and the fact that, in so exercising that right or duty, they acted negligently and wantonly, and caused the boy to jump off the train while running at a speed unsafe for him to get off, and he is injured, will not exonerate the defendant."

And it was also said in that cause:

"The defendant had the right to put him off from its cars, and in doing so could use such force as was necessary to eject him, but in so doing must exercise the right with ordinary care and prudence on its part, and, if the train was moving at such a rate of speed as to render it unsafe, and the night was dark, they must stop or slow up the train; and the mere fact that the boy was on the train as a trespasser was not such negligence as to relieve the defendant from this obligation, and gave its servants no license to negligently and wantonly eject him in a manner liable to do him great bodily harm." "And it could make no difference whether he was ejected by actual force or by threats, if he jumped from the train in obedience to a command of the brakeman. He being a boy 15 years old, he would not be expected to use that degree of judgment and discretion that would be expected and required of an adult. He believed, and he had a right to believe, that force would be used to eject him; and when he saw the brakeman coming toward him, threatening to throw him off, he cannot, under the circumstances, be charged with negligence for not having waited longer."

In the case of *Kline v. Central Pacific Ry. Co.*, 37 Cal. 400, suit was brought by a boy sixteen years old to recover damages for being expelled from a moving train. The testimony tended to show that the plaintiff was told that he could not ride and was ordered, with a show of force by the conductor, to get off the car. The trial court granted a nonsuit. The supreme court ordered a new trial, and among other things said:

"Had the plaintiff been a man or of mature age and discretion, it might be said judicially by the court, that having jumped off the cars merely because he was commanded to do so, he had no one to blame but himself for the injury he sustained, but being a boy, only sixteen years of age, we think

it should have been left to the jury to say whether in his case the sharp command of a conductor, accompanied by a show of force, did not, under all the circumstances, amount to compulsion."

In discussing the questions involved in this case, the supreme court of North Carolina, in *Pierce v. N. C. R. Co.,* 32 S. E. 399, said:

"But it is needless to multiply cases. All of them hold that such ejection is done by the servant in the general scope of his employment, and if done recklessly, or wantonly and maliciously, and even if in a manner forbidden by the master's orders, the company is liable for the tortious act. The ground is that the proximate cause of the injury is not the trespasser's wrongfully getting on the cars, but the tortious manner in which the servant makes him get off, and that, this act being in the general scope of the servant's employment, the master is liable. In the present case, whether the child jumped off because ordered by the brakeman, or by reason of the hint of a lump of coal whizzing by his head, or was actually struck and knocked off, this mode of getting him off the moving car was tortious, and the defendant is liable for the injury caused thereby."

The supreme court of Massachusetts, in *Lovett v. Salem and South Damns R. R. Co.,* 9 Allen 557, held the street railway company liable where the person in charge of the car ordered a boy ten years old, who had no money to pay his fare, to jump off the moving car, and who obeyed and was injured. To the same effect are *Holmes v. Wakefield et al.,* 12 Allen 580; *Ramsden v. Boston & Albany R. R. Co.,* 104 Mass. 117; *Rounds v. D. L. & W. R. R. Co.,* 64 N. Y. 129; *Hoffman v. N. Y. C. & H. R. R. R. Co.,* 87 N. Y. 25; *Townley v. C. M. & St. P. Ry. Co.,* 53 Wis. 626.

The foregoing authorities settle the proposition that a conductor has the implied authority to remove trespassers from the train under his charge, and in the discharge of his duty he must exercise reasonable care and caution, and if, while acting within the scope of his authority, he wantonly and wilfully, either expels a person from a train moving at such rate of speed as to render dangerous such act, or if he by threats and show of force, impels one through fear, to jump from the moving train and injury results, the master will be liable. In the case under consideration, the conductor had the right and authority to eject or expel the plaintiff from the train, but he had no right to do this while the train was moving at such speed as to endanger the plaintiff's life or subject him to great bodily harm. The plaintiff was an ignorant country boy, belonging to the colored race, had, as testified to by him, not ridden on a railroad car since he was eight years old, when he came to Oklahoma with his mother. He lived on a farm, and did not see a train often. He did not exhibit a high order of intelligence, or display the ordinary knowledge common to boys of his age. Whether the person who ordered him off the train was the conductor, was a question he had the right to have submitted to the jury. Whether he was ordered off and induced to jump through fear of the conductor doing him some bodily harm, was also a question which should have gone to the jury. This was not a case where there was an entire absence of testimony upon some material point, nor was it a case where the negligence of the plaintiff in getting on the train would defeat his right to recover for an injury resulting from wanton and wilful acts of the defendant in getting him off the train.

We think the court erred in directing the verdict of the jury. The judgment is reversed at the costs of the defendant in error, and the cause remanded, with directions to grant a new trial.

Irwin, J., who presided in the court below, not sitting; all the other Justices concurring.