# CHICAGO, R. I. & P. RY. CO. v. EVANS.

No. 3245.   Opinion Filed February 10, 1914.

(138 Pac. 804.)

1.  **CARRIERS—Ejection of Trespasser—Liability for Injuries.** A person who enters a passenger train at a station, without ticket or money to pay fare, for the purpose of collecting an account from a passenger on such train, and remains on the train after it leaves such station, is not a passenger, and the company, through its servants and employees, may eject him from the train at a proper place for failure to produce a ticket, or to pay fare, or on account of boisterous conduct, and the company is not liable for injury resulting to such passenger when only such force is used as is reasonably necessary to eject him under the circumstances.

2.  **SAME—Liability for Wanton Injuries.** A railway company is liable for injury willfully and wantonly inflicted upon a trespasser or licensee on one of its passenger trains.

3.  **SAME.** If, in ejecting a trespasser or licensee from one of its passenger trains, the servants and employees of the company use more force than is reasonably necessary, or if after he is ejected they wantonly and willfully injure him, the company is liable for such injury.

(Syllabus by Galbraith, C.)

*Error from District Court, Seminole County;*
*Tom D. McKeown, Judge.*

Action by Charley Evans, an infant, by C. T. Evans, his father and next friend, against the Chicago, Rock Island & Pacific Railway company.   Judgment was for the plaintiff, and the defendant brings error.   Affirmed.

*C. O. Blake, H. B. Low, R. J. Roberts,* and *W. H. Moore,* for plaintiff in error.

*G. C. Crump, A. M. Fowler,* and *J. L. Skinner,* for defendant in error.

Opinion by GALBRAITH, C.   This was an action instituted by Charley Evans, a minor, by his father and next friend, for damages for personal injuries on account of an alleged forci-

ble and wrongful ejection from one of the defendant's passenger trains between Holdenville and Wewoka, Okla. Issue was properly joined, and there was a trial to the court and jury and a verdict and judgment for the plaintiff against the defendant for $1,945, from which an appeal was properly perfected to this court by petition in error and case-made.

Error is assigned in overruling the motion for new trial and in rendering judgment for the plaintiff. It is urged by the plaintiff in error that the trial court erred in its instructions to the jury and in refusing to give a requested instruction, and that the judgment is excessive.

It appears from the evidence that the plaintiff, who was a young man, nineteen years of age, boarded one of the plaintiff's passenger trains at Holdenville for the purpose of collecting a debt from one Mike Ryan, a passenger on said train, and that after he boarded the train he engaged in a controversy with Mike Ryan, and the train pulled out of Holdenville and continued on its journey toward Shawnee, and, when some three or four miles from Holdenville, the plaintiff, still engaged in his controversy with Mike Ryan, became boisterous and was creating a disturbance with the passengers on the train, and, the conductor's attention being then called to the disturbance, he went back to the part of the train where the plaintiff and Ryan were and attempted to quiet the plaintiff. The auditor then asked plaintiff for his ticket. The plaintiff said he had no ticket, "wasn't going anywhere," and had no money to pay his fare, and the conductor, then failing to quiet him, gave the signal and stopped the train, and called the brakeman and a railway detective, by the name of Burnett, to assist him, and proceeded to eject plaintiff from the train. The plaintiff put up a vigorous fight, but was finally ejected, and when he was jerked from the steps of the car to the ground he was then at the top of an embankment or fill, variously estimated by the witnesses from ten to twenty feet deep. A witness for the plaintiff testified that Burnett then grabbed the feet of the plaintiff and whirled him down the embankment. The brakeman testified for the defendant that Burnett pushed the plaintiff and that caused him to roll down the

embankment. At any rate, he rolled down to the bottom of the fill. The train was then started, and a physician who was aboard the train suggested to the conductor that for the protection of the company and plaintiff he ought not to be left in that place, and suggested that the train be backed up and he be placed in the baggage car and taken to the next station, which was We-woka, and turned over to the authorities. The train was then stopped and backed up, and the plaintiff was helped up, or got up, and without assistance walked and got into the baggage car, and rode there until the train arrived at Wewoka, where he was turned over to the county physician. · All this occurred on May 25, 1909. The evidence shows that on August 2d following the plaintiff was adjudged insane by the insanity board of Pittsburg county, where his father resided and where he was taken after this incident and sent to the insane asylum at Norman, where he was still confined at the date of the trial, February 1, 1911. It was contended on behalf of the plaintiff that the force and violence used in ejecting him from the train and after he was ejected was the proximate cause of his subsequent insanity.

It is clear from the testimony that the plaintiff was not a passenger on the defendant's train, and that he did not intend to become a passenger when he entered the train. He neither purchasd a ticket before entering nor provided himself with money to pay his fare from the station where he entered to the next station. The railway company, therefore, did not owe him that high degree of care it owes a passenger on one of its trains. Its servants had a right to eject him in a proper manner and at a proper place for failure to pay his fare, or to produce a ticket, and on account of the boisterous conduct and annoyance he caused to the passengers on the train. Section 813, Rev. Laws 1910.

In instruction No. 2, complained of by the plaintiff in error, the court told the jury that the servants of the defendant had a right to eject the plaintiff from the train or to remove him from the passenger car to some other part of the train, but in so doing they were bound to use only such force as was reasonably necessary under the circumstances to remove and eject him.

In the third instruction of the court to the jury, also complained of by the plaintiff in error, the court told the jury, in effect, that the plaintiff was not a passenger on the train, and he could not recover for such ejection without unnecessary force.

It is said by Sharp, C., in *C., R. I. & P. Ry. Co. v. Stone,* 34 Okla. 368, 125 Pac. 1122:

"Railway companies are bound to exercise their dangerous business with due care to avoid injury to others; and when they fail to do so they are liable for damages even to a trespasser, who has not been guilty of contributory negligence. White, Personal Injuries in Railroad, etc., sec. 1075. A reckless disregard of consequences may be so great as to imply a willingness to inflict an injury, such as to entitle a trespasser to recover, although there is no actual intent to harm him. *Id.* sec. 1078. On the contrary, it is the general rule that the railroad company is not liable to a trespasser on its property, in the absence of any wantonness and willfulness or gross negligence. Under settled rules of public policy, railway companies are not to be made liable for injuries received by trespassers upon their trains, unless the injury is inflicted under circumstances indicating wantonness or willfulness in the servants of the companies. The rule seems to be almost universally recognized and approved, and is in consonance with reason and right." (See cases cited.)

It does not seem to be material in this case whether the plaintiff was a trespasser or a licensee; so long as he was not a passenger, the company's duty to him would not be any different, since it would be liable for injury wantonly and willfully inflicted upon either trespasser or licensee.

The instruction requested by the plaintiff in error and refused by the court was as follows:

"If you feel and believe from the evidence in this case that the plaintiff was a trespasser upon the passenger train of the defendant, then the defendant, through its employees and servants, was only bound to the duty of not willfully and intentionally injuring the plaintiff."

While this instruction requested by the plaintiff in error was possibly a correct statement of the rule of law as to the duty a carrier owes a trespasser on one of its trains, still, if the court in its instructions covered this duty in different language and in different form, it was not prejudicial error to deny the re-

quested instruction.  *Finch v. Brown,* 27 Okla. 217, 111 Pac. 391, and cases cited.

The court told the jury in instruction No. 3 that the plaintiff was not a passenger on defendant's train, and that the defendant's servants had a right to eject him without unnecessary force, and that he was not entitled to recover for such ejection; and in instruction No. 2 told the jury that the servants of the plaintiff in error had a right to remove the plaintiff from the train or from the passenger car to some other part of the train, but that in so doing they were bound to use only such force as was reasonably necessary under the circumstances.  The jury doubtless understood from these instructions that the company was not authorized to use wanton or willful violence toward the defendant, even though he were a trespasser, and that the company was only liable for injury resulting from wanton and willful violence used in ejecting the plaintiff from the train.

The instructions of the court to the jury seem to reasonably cover the law of the case and the respective rights and duties of the parties under the circumstances, and we cannot hold that the refusal to give the requested instruction was prejudicial.

A careful reading of the entire record convinces us that the railroad employees did not use wanton and willful force in ejecting the plaintiff from the train; that he put up a vigorous fight; and that they only used the necessary force to overcome his resistance, but that, after he was ejected and on the ground by the side of the car, the defendant's servant, Burnett, caught him by his feet and turned him a somersault, causing him to roll down the embankment.  The jury may have found that this act of Burnett was wanton, willful, and unnecessary violence, and if they so found, under the law, the company would be liable for any injuries that may have resulted to the plaintiff.  *Moore v. A., T. & S. F. Ry. Co.,* 26 Okla. 682, 110 Pac. 1059; *Folley v. C., R. I. & P. Ry. Co.,* 16 Okla. 32, 84 Pac. 1090; *C., R. I. & P. Ry. Co. v. Radford,* 36 Okla. 657, 129 Pac. 834; *St. L. & S. F. R. Co. v. Lee,* 37 Okla. 549, 132 Pac. 1072, 46 L. R. A. (N. S.) 357.

It is also urged that the judgment is excessive. While the evidence fails to show that the plaintiff suffered any great bodily injury, still we cannot put our judgment as to the amount he was entitled to recover against that of the jury. He suffered some injury. The trial court in instruction No. 4 gave the jury the proper rule for measuring his injury and for estimating the reasonable damage resulting therefrom. The jury may have found that the plaintiff's insanity was due to heredity, or that the proximate cause thereof was the wanton and willful act of Burnett in tumbling him down the embankment after his ejectment from the train.

No sufficient reason appears for disturbing the finding of the jury. We therefore recommend that the judgment appealed from be affirmed.

By the Court: It is so ordered.