Illinois Central Railroad Company

*v.*

Susan Slatton, Administratrix.

Contributory negligence. In an action against a railroad company, to recover damages for the death of a passenger, alleged to have been occasioned by the wrongful or negligent conduct of the agents of the company, it appeared the train, upon which deceased was a passenger, had stopped at a station and remained a sufficient length of time to enable passengers to leave it in safety, but deceased, not availing of that opportunity, waited until the train was again in motion and then, without the interference or suggestion of any of the employees of the company, attempted to leave the train, and, while doing so, was thrown under the cars and received injuries of which he died: *Held*, there appearing to have been no mismanagement of the train on the part of the company, they were not liable.

Appeal from the Circuit Court of Perry county; the Hon. Monroe C. Crawford, Judge, presiding.

The opinion states the case.

Mr. George W. Wall, for the appellants.

Mr. Edward V. Pierce and Mr. William M. Christian, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, brought to the Perry circuit court, by Susan Slatton, administratrix on the estate of John W. Slatton, against the Illinois Central Railroad Company, to recover damages for having caused the death of the intestate, by the negligent management of a train.

There were two counts in the declaration, one alleging that while deceased was using due care when alighting from the train at Tamaroa, the train was suddenly and violently started forward, by means whereof deceased was thrown under the wheels, and injured so that he died.

In the other count it is alleged, that as deceased was about to alight from the train, using due care, he was violently pushed off by the servants of the company in charge of the train, whereby he was thrown under the wheels, receiving a fatal injury.

The general issue was pleaded and the cause tried by a jury, who found for the plaintiff, and assessed the damages at eleven hundred and sixty-six dollars.

A motion for a new trial was overruled, and judgment rendered on the verdict, to reverse which the defendants appeal.

There was much testimony heard, and, as usual in such cases, not entirely harmonious.

The rule of law need not be repeated, that, to justify a recovery in this action, the allegations of the plaintiff must be sustained by the evidence; and when the evidence is conflicting, the verdict must stand, unless it shall appear that, although it is conflicting, the weight is decidedly in favor of the defendant.

The first count charges as negligence on the part of the defendants, that while deceased was leaving the car, using due care, the train was suddenly and violently started forward, by means whereof he was thrown under the wheels, and so injured as to cause his death.

It can not be claimed that the evidence tends, in the slightest, to substantiate this charge—no witness has spoken to that point, consequently, these allegations are not sustained.

The second count charges that the deceased was violently pushed off the train by the servants of the defendants in charge of the train, whereby he was thrown under the wheels, and was injured fatally.

The case was put to the jury mainly on this count. The theory of the plaintiff evidently was, that some employee of the company used force in putting the deceased off the train while it was in motion, and it was so put to the jury by the first instruction asked by the plaintiff.

If there existed reasonable grounds for the hypothesis of the second count, the civil authorities, indeed, the whole people of Tamaroa, were greatly remiss in their duty, in not pursuing the offender in order to his prompt punishment, for it was murder, most foul and terrible. It can not be possible that such a fiend was employed by this company in their service.

John W. Parlier, in his testimony, gives some color to this theory, and so does Robert Murray, a lad about sixteen years of age when the accident occurred, in a slight degree, when he says there was some man on the car platform behind deceased; thought it was some man belonging to the train—the brakeman or conductor; did not see him after deceased fell; when he first saw deceased, he was standing with one foot on the car steps and one foot on the station platform, with one hand on the railing; the man had on a cap; did not see any badge on it; thought he was a brakeman or conductor; had seen him pass through on the train before, several times; he (the man) was standing on the car platform; did not say or do anything to the deceased; saw deceased get off; thought he had one foot on the platform of the station; the train had moved eighteen or twenty feet. On his cross-examination, he says the man was a low, heavy set man; he also says there were two cars behind the one he (meaning, evidently, the deceased) was on, and another, which would make three cars, when the proof is over-

whelming, deceased came out of the car next forward of the last car.

It is fully proved that no employee on the train could have interfered with the deceased, in any particular, unless, possibly, Glassford, who states he did leave his station, which was on the front end of the last car, and got out on the station platform at Tamaroa, and passed through one or two cars to regain his position, and he testifies he did not see or touch any soldier getting off, nor say anything to any one of them who got off at Tamaroa, and knew nothing of the occurrence until he was told of it by a soldier.

The second witness for plaintiff, Mr. Corgan, gives a very full and clear account of the occurrence, of which he was an eye witness. He says he saw the deceased when he was injured; was within fifteen feet of him; was on the platform opposite to him, about six feet from him, when he fell; he was in the car with the soldiers; saw him when he came out of the car; seemed to be feeble, and held on to the railing of the car; as he came out of the car door a man took hold of his arm, apparently for the purpose of helping him off; he seemed to be aiding the deceased, and helping him to get off; saw no badge by which to distinguish him as belonging to the railroad; saw him open the door and assist deceased to get off; deceased was holding on to the railing, and was holding on to it when he fell; train was moving slowly when he came out of the car; seemed to be just starting when he came out; it was about noon. On his cross-examination, he says there was nothing unusual about the conduct of the train, except that there was a large crowd of people on the platform; saw James, the brother of deceased, same day; when he first saw deceased, he was inside of the car; saw some man helping him who appeared to be friendly; deceased stepped down the steps, holding on to the railing with his hands, and got both feet on the station platform; he would not have got hurt if he had not held on to the railing after he got off the steps; held on to the railing with both hands; was pulled along twelve or fifteen feet when he fell down; think both feet were on the station platform.

In connection with this testimony, and strongly corroborative thereof, is the evidence of D. C. Barber, a witness for the defense, and known as a prominent and intelligent citizen of Tamaroa. He says he saw deceased the day he was hurt; saw the occurrence; the train stopp'd some time; the soldiers were getting off and meeting friends, and there was a good deal of bustle; saw the man coming out of the car door; one or two men in the garb of soldiers were helping him, as he seemed to be feeble; he stepp'd on to the steps, and then got on to the platform; he held on to the railing too long, and was dragged some distance before he fell; witness started to catch him, but he lost his hold before witness could get to him; his head was struck by the steps, or some part of the train, after he fell; in trying to rise, his leg got under the car and was crushed; saw him when he came out on the platform; soldiers were helping him and had hold of him; the train was in motion, and he would not let go of the railing, and was dragged down; don't know who the persons were that were holding him; they were dress'd as the other soldiers; he was stepping down the stairs very carefully; heard no remark made to him; saw no one push him or shove him; all that was done, seemed to be with a friendly design; thinks they had their hands under his arm to help him.

On his cross-examination, he says he was standing on the depot platform; two persons seemed to be assisting deceased; judged they were soldiers, from their garb; deceased stepp'd on to the platform with his feet; his feet got on the platform, (station) and by reason of his holding on to the railing, he was dragged along and pulled down; it was the noon train, going south; was there when the train came up, and it stopp'd longer than usual; a good many got off, and friends were meeting them; did not see any badge on the caps of the soldiers or persons who were helping the deceased.

This testimony of Mr. Corgan, the plaintiff's witness, and Mr. Barber, the defendants' witness, explodes the theory that deceased was improperly dealt with by the employees of the

company, and is at variance with that of Mr. Parlier, who says he thinks deceased did not have hold of the railing when he tried to get off the car.

In addition to this is the testimony of Ezra Woods, on the part of the defense. He says he saw the accident; when coming back from the baggage and express car, he saw deceased coming out on the car platform; saw him stepping off the steps of the car on to the depot platform; and just as he fell, Porter, who was beside witness, said, "look there;" first noticed deceased when he was stepping down the steps; he had his hands on the railing; the train was just moving at the time, very slowly; knew the brakemen and trainmen; saw no one touch deceased; several soldiers were on the platform at the time; witness was standing where he could see; did not hear any one say anything to him; train stopp'd longer than usual, two or three minutes.

On his cross-examination, says when he first saw deceased, he was going down the steps; had hold of the railing; could not say that his feet struck the platform; had hold of the railing as he fell.

George W. Kenney testifies he was on the platform when the train arrived; it stopp'd from two to five minutes—longer than usual; saw deceased when first standing on the car platform; was coming out of door; did not know he was going to get off the train until he struck the station platform; saw him at that time plainly; saw no one, or heard any one say or do anything to him; three to five soldiers on same platform of car; he stepp'd on the steps, and had hold of the railing with his hands when he stepped on the first step; saw him get on the station platform with his feet, but he still held on to the railing of the car, and the train dragg'd him from six to eight feet; the train had just started when witness first saw him; heard no one say or do anything to him; saw him after the train had passed; was the second man that took hold of him.

Henry Clay saw the accident; train stopp'd longer than usual; saw the man that was hurt; his impression is the man

was on the platform when the train started; remarked to some one, when witness saw him "scrambling" and clinging to the rail, that he was sick and would get hurt.

It was agreed by the parties that Nelson Holt, the station agent, who was absent, would testify, if present, that he had a fair opportunity of seeing all that happened; that he knew the employees of defendants as were at the time running on the passenger trains passing Tamaroa; that the train in question stopp'd at the station more than the usual length of time, and long enough to enable passengers to get off; that deceased was not thrown or push'd off, or negligently jostled off by any brakeman or other person employed on that train; or if done, witness did not see it.

We think this testimony overthrows the theory on which this case is based, and is so overwhelmingly in favor of the defense, as to demand from the jury a favorable verdict.

The evidence recited satisfies us that deceased had got on to the station platform, and still clung to the railing of the car steps, and by so doing was dragg'd to his death. This was no fault of the company. No negligence can be imputed to them, unless it be shown that by bad management of the train, or careless conduct of their employees, deceased was placed in a perilous situation. The proof is abundant that the train stopp'd an unusual time—for a time sufficient to enable the passengers to leave it safely. If the deceased did not avail of this opportunity, but chose to attempt to get off when the train was again in motion, and this without the direction or knowledge of any employee on the train, it was his folly, and the consequences of it must rest upon him alone.

The testimony so greatly preponderating in favor of appellants, the verdict should have been in their favor. The court should have set it aside on the motion for a new trial. It was error to refuse the motion.

For this error, the judgment is reversed and the cause remanded.

*Judgment reversed.*