### J. A. OXSHER v. HOUSTON EAST & WEST TEXAS RAILWAY COMPANY.

Decided May 12, 1902.

**1.—Railway Company—Assisting Passenger Aboard.**

    Where plaintiff entered a train to assist a passenger aboard, the railway company, in the absence of notice of his intention to then get off, was under no obligation to hold the train long enough for him to do so, and was not liable for injury caused by his jumping from the moving train after it had stopped at the station the usual and sufficient length of time, the train employes having no reason to suppose he had entered the train for a purpose other than to take passage thereon.

**2.—Same—Contributory Negligence Verdict Instructed.**

    Where plaintiff, after assisting parties on board a train, walked rapidly out and leaped off in the dark from the moving train at a point where he knew there were side tracks with cars usually standing on them, there was such negligence as warranted the court in instructing a verdict for the defendant in an action for the injury so received.

Appeal from Nacogdoches. Tried below before Hon. Tom C. Davis.

*Blount & Garrison,* for appellant.

*Baker, Botts, Baker & Lovett* and *J. S. McEachin,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellant, an alleged minor, through his next friend, G. E. Oxsher, instituted this suit to recover damages of appellee, resulting from the crushing of his foot by the wheel of a car. The court instructed a verdict for appellee.

It was developed by the facts that appellant, who was about 18 years of age, went in company with two ladies, his relatives, and four children, to Garrison, a station on appellee's line of railway to assist them on the train, about 10:30 o'clock at night, on June 25, 1900. Two young men named Weatherly were also assisting the ladies and children. When the train arrived the three young men, in company with the women and children, got on the train, which was very crowded. After procuring seats for some of the party the train began to move, and the three young men ran out on the platform of the car and jumped off. Appellant struck a freight car on a siding and was knocked under the coach and had his foot so badly crushed that it had to be amputated. The train was running from seven to ten miles an hour when appellant jumped off. Appellant entered the train with a basket in his hand. One of the other young men carried baggage, and the remaining one carried a child. The conductor passed the people as they were moving towards the train, and he asked one of the young men where the people were going, and he replied that they were going to Houston. Nothing was said or done to indicate to the conductor that the young men were getting on the car merely to assist the women and children, and that they desired to get off. The train remained at the station from three to five minutes, the usual time. The young men testified that they heard no signal given for the train to start. It was dark where appellant jumped off, and he did not take time to see where he was jumping. The train stopped long enough at the station to give full time for passengers to get off and on the car.

We do not think the evidence established any negligence upon the part of the railway company, and it was therefore not error for the court to instruct a verdict for appellee. It is not alleged nor proved that the conductor had any notice of the fact that the young men desired to get off the car after entering it, and the appearance of the men carrying a child and baggage tended to lead to the reasonable conclusion that they, like the women and children, were entering the car to remain. In the absence of knowledge, or such facts as would charge with knowledge, on the part of the conductor that appellant did not intend to become a passenger, the railroad company owed him no duty except to give him a reasonable time to safely board the train. That this was done was uncontroverted. It may be that the conductor should have

assisted the women and children on the car, and that a stool should have been provided on which they might the more easily enter the car, but the failure to assist and to furnish the stool had no direct connection with the accident. Appellant went to the station to help them on, independent of a want of assistance from a conductor or the lack of a stool. It is not intended to convey the impression that had his assistance to the women and children been the direct result of the lack of assistance on the part of the conductor, it could have any controlling influence on the decision of this case. The basis of the decision must be that the railway company, in the absence of notice that appellant desired to get off, was under no obligation to hold the train long enough to give him time so to do, and this conclusion is fortified by the decisions of this and other States.

In the case of Railway v. Miller, 8 Texas Civil Appeals, 241, the Court of Civil Appeals held in a case similar to this: "The relations sustained between the railway company and appellee do not arise out of contract, and the obligations are not such as are imposed by contract. Appellee did not go into the train as a passenger, and hence the duties imposed by law upon carriers to passengers did not rest upon the company and govern its conduct towards him. He went upon the train under an implied permission or license, and the company owed him the duty of ordinary care. * * * The company was under obligation to passengers to stop the train a sufficient length of time for those desiring to get off and those desiring to take passage to do so with safety. It was the duty of appellee to take notice of the usual length of time, and if it was not sufficient, and it was necessary for him to go into the train, in order to place upon the company the duty of holding specially for him to disembark he must have given notice of his intention."

In the case of Railway v. McGilvary, 29 Southwestern Reporter, 67, it was said by the same court: "Plaintiff did not stand in the same relation to the company as a passenger, and therefore the liability of the company can not be measured by the standard of duty to passengers. While plaintiff was not a trespasser, and the company was under obligation not to negligently injure him, yet whether or not the company was negligent must depend upon the knowledge the employes had of plaintiff's intention to immediately disembark from the train, or that the train did not stop the usual length of time, and the same was started without giving some signal indicating an intention to start." The same doctrine is announced in Dillingham v. Pierce, 31 S. W. Rep., 203.

In the case of Railway v. Leslie, 57 Texas, 83, where the plaintiff, who boarded the train to assist some ladies and children who intended to leave on it, had jumped off and was injured, it was said: "There is no evidence showing any other connection of the defendant's agents with the accident except such culpability as may be implied from the short period of time the train of cars remained at the station; and if the defendant is not liable on account of its failure to stop at said station

five minutes, as required by law, or to passengers to board the train, there would exist no basis whatever for complaint in this case against the defendant."

In the case of Railway v. Miller, 39 Southwestern Reporter, 583, decided by this court, the liability of the railway company was made to depend on the knowledge of the conductor that the plaintiff was on the train, following the opinion in the same case by the Court of Civil Appeals of the Fifth District, above cited.

In the case of Berry v. Railway, 60 Southwestern Reporter, 699, the plaintiff got on the train to assist his wife and children and mother-in-law, and was injured in getting off the train, which was leaving the station. The Supreme Court of Kentucky reviewed, among others, the McGilvary and Miller cases above cited, and in conclusion said: "From these and numerous decisions bearing upon this question, we think it is clear that, if appellee had actual or constructive notice that appellant had gone into the car for the purpose of seating his wife and children, and that he intended to get off before the train started, it was their duty to have given him notice before starting the train, and to have held it long enough for him to get off with safety; but in the absence of such notice, no obligation existed on their part." A peremptory instruction was given for the railway company by the trial court and the judgment was affirmed by the Court of Appeals, the court of last resort in Kentucky.

In the case of Railway v. Lawton, 15 Lawyer's Reports Annotated, 434, the Supreme Court of Arkansas through Judge Hemingway reviews numerous decisions on the subject, and says: "But one who goes upon the train to render necessary assistance to a passenger in conformity to a practice approved or acquiesced in by the carrier, in its interest and upon its implied invitation, as before stated, has a right to render the needed assistance and leave the car; and the railroad in permitting him to enter it with knowledge of his purpose is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. Griswold v. Railway, 64 Wis., 652. But the duty is dependent upon the knowledge of his purpose by those in charge of the train, for without such knowledge they reasonably conclude that he entered to become a passenger, and caused the train to be moved after giving him a reasonable time to get aboard. The law could not, in reason or justice, impose as a duty the doing of that which, in the light of everything known to trainmen, would not appear necessary or proper, or hold that the cars should be stopped when there was no reason to stop them except a fact unknown to them. If the attendant intended to become a passenger, he had no reason to ask a continued stop; and if he desired to get off, and that alone made a longer stop necessary, he could not expect or ask that it be made where no occasion for it was known to those in charge."

The evidence clearly established that ample time was given for the

passengers to get on the train, and for several of them to manage to get seats on a crowded car before the train started, and there was not a fact adduced in evidence that tended in the slightest degree to show anything was done to apprise appellee's servants that appellant wished to get off immediately, but his acts and those of his companions tended to create the impression that all of them were passengers.

We have not adverted to the conduct of appellant in rushing out in the dark and jumping from the platform of the moving car against a freight car standing on a siding, and thus bringing about the injury to his foot. The courts in several of the cases cited have held that such conduct was contributory negligence and the party guilty of such conduct could not recover. In the case of Railway v. Leslie, above cited, it was held that when the plaintiff "found himself safely on the defendant's cars, although being rapidly carried away unwillingly from home, was required under the circumstances to act with prudence the same as would be required of any other passenger; and whilst the defendant was not without fault, that fault of too speedily leaving the station did not endanger the personal safety of the plaintiff, and in its very nature could not be the proximate cause of the injury which the plaintiff received through his own direct act, and which was the proximate cause of said injury."

In none of the cases cited by appellant has it been held that a railway company will be liable for injuries inflicted on a person by jumping off the train who has gotten on with passengers, to assist them, when the servants have no notice of his desire to leave the train. As said by the Supreme Court of Wisconsin in the case, above cited, of Griswold v. Railway, "the law would work in such a case the grossest injustice if it could create a liability of the company. It would seem to be the first duty of the person entering a train for such a purpose to notify some one in its management of his presence, business, and purpose, so as to create some relation to the company, and make it its duty to care for him. The principle is elementary, in all such cases, that the liability of the company to a person injured by being in such a place of danger depends upon the company's failure to use ordinary care to avoid injuring him after becoming aware of his danger."

The evidence would have admitted of no other verdict than the one instructed by the court, and the judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

The motion for rehearing presents no meritorious grounds for consideration. As stated in the original opinion the evidence failed to establish negligence on the part of the railway company, and in addition we find that appellant was guilty of contributory negligence in jumping as he did from the moving car.

The uncontroverted evidence showed that it was at night and dark,

so dark that appellant said he could not see anything, and he walked rapidly out of the coach and down to the second or third step, and without taking hold of the handrail jumped out into space. He swore in his depositions that he did not take time to see where he was jumping. He knew that a side track was there and that it was usual to leave box cars on it and had seen them down where he jumped off. He saw box cars on the side track before he got on the train. He swore he struck something when he jumped which turned him under the wheels of the train. The act of jumping as appellant did was utterly devoid of care and so opposed to the dictates of ordinary prudence that it was negligence in itself, and was properly so declared by the court. Bullock v. Railway (Texas Civ. App.), 55 S. W. Rep., 184.

The motion is overruled.

*Overruled.*

Writ of error refused.