## ST. LOUIS & S. F. R. CO. v. LEE.

No. 2694. Opinion Filed June 11, 1913.

(132 Pac. 1072.)

1. CARRIERS—Injury to Person Accompanying Passenger—Liability. One who goes upon a train to render assistance to a passenger, in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. If he is injured by reason of the sudden starting of the train or the omission to give the customary signals, the carrier will be liable.

Vol. 37—35.

2. SAME—Boarding and Alighting Passengers—Duty of Carrier. As a general rule it is not the duty of a carrier to station an employee at the entrance of a car for the purpose of assisting passengers off and on; the carrier is, however, required to announce the station as the train arrives, to stop the car at the platform, to hold the train a reasonable length of time to enable all persons using reasonable diligence to enter or depart, to furnish a safe and convenient mode of entering or leaving the train, and to give the usual and customary signals before starting the train.

3. SAME. It is not the general duty of a carrier to assist a passenger to alight from a train, unless some special circumstance imposes such duty. But in the case of a sick, old, or infirm passenger, or one making request for assistance, it undoubtedly is the duty of the company to assist them, and in cases where by the use of ordinary care the conductor, or other employee, sees that such help is needed, it becomes the duty of the company to furnish such assistance.

4. NEGLIGENCE—"Actionable Negligence"—Elements. In every case involving actionable negligence there must be a duty on the part of defendant, a failure to perform that duty, and an injury or damage resulting by reason of such failure.

(Syllabus by Robertson, C.)

*Error from District Court, McCurtain County;*
*T. G. Carr, Special Judge.*

Action by W. T. Lee against the St. Louis & San Francisco Railroad Company to recover damages for personal injuries. Judgment for plaintiff, and defendant brings error. Reversed.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.
*Stewart & McDonald* and *Nelson & Steel,* for defendant in error.

Opinion by ROBERTSON, C. On July 28, 1908, the plaintiff below, W. T. Lee, accompanied his mother-in-law, Mrs. A. C. Cabbler, an aged and infirm lady, to defendant's depot at Haworth, Okla., for the purpose of assisting her to take the train to Hugo, Okla.; he purchased her ticket and, when the train arrived, assisted her in entering the car and entered thereon himself, carrying two pieces of hand baggage. After

having secured a seat for Mrs. Cabbler and deposited her baggage, he started to leave the train, which by that time had started; he claims that as he was in the act of getting off the train some person was attempting to get on and struck his foot and caused him to fall headlong on the platform, whereby he was seriously and permanently injured. The conductor testified positively that he, as was his usual custom, stood by the steps of the car and assisted passengers off and on; that he had no knowledge of plaintiff's intentions to get off the train, but supposed he was a regular passenger. In his original petition plaintiff alleges "that the defendant expressly agreed and promised that it would stop its locomotive engine and cars at said station a sufficient length of time, not only to permit the said Mrs. Cabbler to be assisted aboard the said cars by the plaintiff, but also a sufficient time for plaintiff to leave the cars in safety." There being a failure of proof on this issue, the trial court, over the objection of defendant, permitted plaintiff, after he had rested his case, to amend his petition so as to charge that none of the defendant's employees or agents were present at the time he entered the car, and that therefore he could not notify them, or any of them, of his intention to alight after finding a seat for Mrs. Cabbler, and contends that the train made a shorter stop that day than it ordinarily did, and that it started without notice to him and before he could get off. The testimony on this point is conflicting.

The only question in this case is: Did the company, in the absence of knowledge of Mr. Lee's intent to leave the train, owe him the duty of holding the train until he had an apportunity to alight?

The question is practically disposed of by the case of *Midland Valley R. Co. v. Bailey,* 34 Okla. 193, 124 Pac. 987. In that case plaintiff's daughter was sick and was taken to defendant's train by a physician and one or two others, for the purpose of being carried as a passenger. The physician notified the conductor that he had a sick patient whom he desired to put on the train and asked for time to put her on the

car. The physician was intending to remain on the train in order to accompany the patient and said nothing to the conductor about getting off the train; plaintiff also went aboard the train. After the usual business had been transacted the train started, and plaintiff, after the train had gone a short distance, stepped off, fell, and was injured. She sued the company and recovered a judgment. On appeal the case was reversed on the ground that the company owed her no duty in the absence of notice that she intended to alight. In the body of that opinion it is said:

"The principal question in the case is whether or not the conductor of a train who is not informed that a person assisting a sick passenger desires ·to leave the train after the passenger has been seated, and who does not know that such person desires to leave the train, is bound to ascertain that fact before starting his train. To state the question is practically to answer it. In this case the petition did not allege that the defendant company had any knowledge that it was the purpose of the plaintiff to leave the train. It did not allege that there were any facts or circumstances which charged the defendant with notice that it was her intention to leave the train, and the evidence was in perfect harmony with the petition; there being no evidence of any kind whatsoever tending to show such knowledge on the part of the defendant company, or any circumstances tending to charge the company with notice. A demurrer was filed to the petition, which was overruled. Objection to the introduction of evidence was made and overruled. A demurrer to the plaintiff's evidence was interposed and overruled, and a request for a peremptory instruction was presented and denied, so that the point was saved at every step in the proceeding. There is no controversy but that it is the duty of a railroad company to stop at stations a sufficient length of time to permit reasonably careful persons to leave and enter the train and transact their business with the company. If the railroad company receives sick passengers, it is its duty to stop a sufficient length of time to enable these passengers, in the exercise of reasonable care, to enter the train. If persons not intending to become passengers desire to assist sick persons to enter the train, they have the right to do so; but, if they desire special service on account of their intention to leave the train after seating of their patient, it is only fair that they

should notify the railroad company of this desire. The conductor cannot be expected to enter his train and inquire of persons whether they desire to get off; but, when reasonable time has been given and the platform is clear, he has a right to start the train, and, as the plaintiff in this case had not given the conductor or any other employee of the defendant any notice of her intention to leave the train after seating her daughter, it was not the duty of the defendant to hold the train indefinitely or make special inquiry concerning her plans. The doctor did speak about putting his patient on the train, but said nothing about wanting time to get off, and, in fact, did not get off, as it was his purpose to, and he did become a passenger, going with the patient to her destination. It would have been entirely convenient in that same conversation to have cautioned the conductor that the plaintiff desired to leave the train, but he did not do so, and therefore no special duty devolved upon the defendant to do more than give reasonable time for reasonable people to enter the train with the patient. These principles are so simple and seem so clear and just that it is not surprising that the authorities are in substantial harmony in laying down the rule. In Hutchinson on Carriers (3d Ed.) sec. 991, the rule is stated as follows: 'A person who comes to a railroad station to assist passengers in entering or leaving the train, though not a passenger, is not a trespasser, as he comes with at least the tacit invitation of the carrier. While so engaged, he does not stand in the relation to the carrier of a bare licensee, but is deemed to have been invited to be there by virtue of the relation existing between the carrier and the intending or arriving passenger. The carrier therefore owes to him the duty of exercising at least ordinary care to see that he is not injured by reason of defective stational facilities or approaches thereto. So one who goes upon a train to render necessary assistance to a passenger, in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. If he is injured by reason of the sudden starting of the train or the omission to give the customary signals, the carrier will be liable.' This rule is supported by numerous authorities, amongst which are the following, to which our attention is called by the plaintiff in error: *Little Rock & F. S. Ry. Co. v. Lawton,* 55 Ark. 428, 18 S.

W. 543, 15 L. R. A. 434, 29 Am. St. Rep. 48; *Seaboard Airline Ry. v. Bradley,* 125 Ga. 193, 54 S. E. 69, 114 Am. St. Rep. 196; *Hill v. Louisville & N. R. Co.,* 124 Ga. 243 52 S. E. 651, 3 L. R. A. (N. S.) 432; *Atlantic & B. R. Co. v. Owens,* 123 Ga. 393, 51 S. E. 404; *Coleman v. Georgia R. & B. Co.,* 84 Ga. 1, 10 S. E. 498; *Cole's Adm'r v. Chesapeake* (Ky.) 113 S. W. 822; *Berry v. Louisville & N. R. Co.,* 109 Ky. 727, 60 S. W. 699; *Lucas v. New Bedford,* 6 Gray (Mass.) 64, 66 Am. Dec. 406; *Flaherty v. Boston & M. R. R.,* 186 Mass. 567, 72 N. E. 66; *Saxton v. Missouri Pac. R. Co.,* 98 Mo. App. 494, 72 S. W. 717; *Yarnell v. K. C., Ft. S. & M. Ry.,* 113 Mo. 570, 21 S. W. 1, 18 L. R. A. 599; *Dunne v. New York,* 99 App. Div. 571, 91 N. Y. Supp. 145; *Izlar v. Manchester & A. R. Co.,* 57 S. C. 332, 35 S. E. 583; *Oxsher v. Houston, E. & W. T. R. Co.,* 29 Tex. Civ. App. 420, 67 S. W. 550; *Bullock v. Houston, E. & W. Ry. Co.* (Tex. Civ. App.) 55 S. W. 184; *International & G. N. R. Co. v. Satterwhite,* 15 Tex. Civ. App. 102, 38 S. W. 401; *Dillingham v. Pierce* (Tex. Civ. App.) 31 S. W. 203; *Griswold v. Chicago & N. W. Ry.* Co., 64 Wis. 652, 26 N. W. 101; *Chesapeake & O. R. Co. v. Paris,* 107 Va. 408, 59 S. E. 398. The only case cited by the plaintiff which in any way conflicts with this general rule is *Louisville & N. R. Co. v. Crunk,* 119 Ind. 542, 21 N. E. 31, 12 Am. St. Rep. 443; but this case appears never to have been followed in the state of Indiana, and it has been expressly criticised in the case of *Little Rock v. Lawton, supra,* by the annotator of the American State Reports at page 55 of 29 Am. St. Rep., in connection with the report of *Little Rock v. Lawton;* by the Supreme Court of Texas in *Houston, etc., R. Co. v. Phillio,* 96 Tex. 18, 69 S. W. 994, 59 L. R. A. 392, 97 Am. St. Rep. 868; and Indiana itself apparently criticises the rule therein laid down in the case of *Louisville & N. R. Co. v. Espenscheid,* 17 Ind. App. 558, 47 N. E. 186. Other authorities supporting the rule we announce are collected in notes in 15 L. R. A. 434, and 3 L. R. A. (N. S.) 433."

In 2 Hutchinson on Carriers, sec. 991, it is said:

"But the duty of the carrier in this respect is dependent upon the knowledge of such person's purpose by those in charge of the train, for without such knowledge they may reasonably conclude that he entered to become a passenger, and cause the train to be moved after giving him a reasonable time to get aboard. He should, accordingly, notify some one in the man-

agement of the train of his presence, business, or purpose, so as to create some relation to the carrier and thus make it its duty to care for him. And where the carrier's servants have no knowledge, or there are no circumstances tending to put them on notice, that a person who has boarded a train to assist another intends to alight before the train starts, they are not bound to hold the train until he has had time to disembark nor to notify him before the train is started."

It might be urged, however, that the above authorities are not controlling in the instant case for that it is in the petition (as amended) charged that none of defendant's agents or employees were present at the car at the time plaintiff entered upon it, and that therefore he could not give notice to them.

Admitting that there was no agent or employee of defendant at or near the car at the time plaintiff entered thereon (although there is strong evidence in the record to the contrary), and that therefore no opportunity was given him to notify the company of his intention to alight after assisting Mrs. Crabbler to a seat, would that fact serve as an excuse for notice, and did it impose a duty on defendant to hold the train until plaintiff had an opportunity to alight?

The negligent act of which plaintiff complains is the starting of the train. By the authorities herein above cited it appears that the defendant may start its train at any time without liability to one who may be intending to leave it, in the absence of knowledge of his intention to so leave. Can a person entering a train, like a regular passenger, without notice to any one of his intention to alight, insist that the company owes him a duty to keep the train standing until he has alighted? Certainly not, unless the absence of the conductor from his post can be said to be the proximate cause of plaintiff's injury.

This necessarily raises the question: Is it the duty of a carrier to station an employee at the entrance of a car or train for the purpose of assisting passengers off and on? As a general proposition no such duty rests on the carrier, and in the instant case, where access to the car was not difficult, and the car was

stopped at the platform prepared and used by the company for that purpose, and in the usual and customary manner, and where no special circumstance existed demanding such additional care, it is obvious that no such duty was imposed on the carrier. We do not desire to be understood as saying that under no circumstance or condition such duty would exist, but in the case under consideration we say it did not exist.

Defendant in error was not a passenger on the train, neither was he a trespasser. He was there by implied invitation, and the company owed him only ordinary care. It did not owe him that high degree of care it owed a passenger. Yet from the adjudicated cases it would seem that, even though he had been a passenger, all the duty the company would owe was to announce the station as the train arrived, to stop the train a reasonable length of time to enable all persons using reasonable diligence to enter or depart, and to furnish a safe and convenient mode of entering or leaving the train, and to give the usual and customary signals before starting the train. From the undisputed facts in this case all these things were done. It is not the duty of the company to assist a passenger in alighting from a train, unless some special circumstance imposes such duty. Thus, in the case of a sick, old, or infirm passenger or one making request for assistance, it undoubtedly is the duty of the company to assist them, and in cases where by the use of ordinary care the conductor or other train employees sees that such help is needed it becomes the duty of the company to furnish such assistance. But in the instant case no such assistance was required, nor was it requested, and, above all, the company had no knowledge of the plaintiff's intent to alight, and inasmuch as the company owed him no duty, except ordinary care, which was given, there can be no liability. *Raben v. Central Iowa R. Co.,* 73 Iowa, 579, 35 N. W. 645, 5 Am. St. Rep. 708; *Hurt v. St. L., I. M. & So. Ry. Co.,* 94 Mo. 255, 7 S. W. 1, 4 Am. St. Rep. 374; *I. C. Ry. Co. v. Slatton,* 54 Ill. 133, 5 Am. Rep. 109.

If there was no duty there could be no liability, for in every case involving actionable negligence there must have been a duty on the part of defendant, a failure to perform that duty, and an injury or damage resulting by reason of such failure. *Faurot v. Okla. Who. Gro. Co.,* 21 Okla. 104, 95 Pac. 463, 17 L. R. A. (N. S.) 136; *Rogers v. C., R. I. & P. Ry.,* 32 Okla. 109, 120 Pac. 1093.

Without doubt the subject is one of regulation and such additional duty might, by law, be imposed upon a carrier. But that is without the case and speculation thereon at this time would be useless.

Entertaining the views hereinabove expressed, it necessarily follows that the judgment should be reversed.

THACKER, C., not participating.

By the Court: It is so ordered.