# ST. LOUIS & S. F. R. CO. v. ISENBERG.

No. 4338.    Opinion Filed June 1, 1915.

(150 Pac. 123.)

1.  **APPEAL AND ERROR—Verdict—Conflicting Evidence.** When controverted questions of fact are submitted to a jury, and the evidence adduced is conflicting and contradictory, but there is competent evidence reasonably tending to support every material allegation necessary to uphold the verdict, and the trial court approves the verdict, and renders judgment in accordance therewith, and a new trial is refused, this court will not disturb the verdict of the jury and the judgment of the court on the weight of such conflicting evidence.

2.  **CARRIERS—Person Assisting Passenger—Time to Alight—Duty of Carrier.** One who goes upon a train to render assistance to a passenger, in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor.

3.  **SAME.** The duties imposed by law upon carriers of passengers do not govern the conduct of the carrier toward one who enters a train, not as a passenger, but to assist a passenger. Such a person, while not a passenger, is not a trespasser. In the absence of any regulation forbidding persons to enter trains for such purpose, a person who goes upon a train to assist a passenger does so under an implied permission or license; and, if notice of his intention to enter the train and return again to the station and platform is given to the company, it owes him the duty of ordinary care for his protection.

4.  **SAME—Necessity of Permission—Notice of Intention.** And it is not necessary, in order to entail on the carrier the duty so to handle its train as to allow reasonable facility for a person who has entered it to assist a passenger to get off without harm to himself, that such person should first have obtained the permission of the conductor to go upon the train, where he gave notice of his intention to do so to another employe, and there was no regulation prohibiting persons from getting upon the train.

5.    CARRIERS—Alighting from Moving Train—Contributory Negligence—Question for Jury. It cannot be said, as matter of law, independently of the statute forbidding the act, that it would be, under all circumstances, an act of negligence for a passenger to attempt to alight from a moving train; but the question is ordinarily one of fact, to be determined by the jury from all the circumstances of the case.

(Syllabus by Robberts, C.)

*Error from District Court, Choctaw County;*

*Summers Hardy, Judge.*

Action by S. Isenberg against the St. Louis & San Francisco Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*W. F. Evans, R. A. Kleinschmidt,* and *E. H. Foster,* for plaintiff in error.

*Works & Copping,* for defendant in error.

Opinion by ROBBERTS, C. This case comes from the district court of Choctaw county, and is an action to recover damages for personal injuries received when alighting from a moving train. Judgment was rendered for plaintiff in the sum of $250, and defendant brings error.

In this opinion we will, for convenience, designate the parties plaintiff and defendant, the same as they were in the lower court.

To maintain this action, the plaintiff testified in substance as follows:

"I reside at Hugo, Okla., and am in my seventy-eighth year. On April 28, 1911, I went to the Frisco depot at Hugo for the purpose of assisting my nephew, his wife, and two children to board the train. They were intending to leave on that train for Missouri. My nephew and his wife were each carrying a child, and each had a bundle, and I carried their suit case. The negro porter

was standing at the steps of the coach, and, as I went up the steps, he says: 'Where are you going?' And I says: 'I am not going anywhere, only to help, these people with these grips on the train. I will be off in a minute.' I then got on the train, went about halfway down the coach, set the grip down, and started out, as fast as I could, to get off. When I reached the platform, the porter wasn't there. I never saw him after I entered the train. I then got down off the steps. I was walking out hurriedly. I walked out and stepped straight off of the steps—straight out toward the depot. I didn't know the train was moving at all. Before I hit the platform I saw the train was moving. I didn't know anything else after that. When I saw the train was moving, I was too far gone. I could not catch myself. I stepped right straight off, just as I would have done if it had been standing, because I didn't know the train was moving. The next I knew the doctor had me right close to home in a buggy, and blood was running down my face from a gash cut in the side of my head, near the ear. After this I kept my bed over two months. I have never seen a well day since. My nerves are all given away. I have a constant headache, and it is worse when I lie down. My head feels like there is something loose in it, and I get so dizzy I can't walk. There is times when I will start out and I will go a few steps, then I will think of something else, and forget what I started to do. I am getting worse every day. My hearing is impaired. Before I was hurt I could do as much common work as any common man 34 years old. I am a carpenter by trade. Since I was hurt I am not able to do anything. I don't remember seeing the conductor of the train that day. I did not see the porter after I got on the train; did not speak to anybody after that."

The nephew, George Isenberg, testified practically the same, as follows:

"I am a nephew of S. Isenberg. I was at Hugo on April 28, 1911, having been on a visit to my uncle, and I was leaving that day. I had my wife and two babies

with me, and my uncle accompanied us to the train. He had our suit case. We entered the train at the front platform of the chair car. The negro porter was standing at the steps. He asked me where I was going, and I told him to Ridge, Mo. He also asked my wife and my uncle the same question. Uncle replied: 'I am not going anywhere. I am just carrying the grip in for the woman. I will be out in a minute.' We took seats a little past the center of the coach. Uncle set the grip down, turned around and gave use good-bye, and then turned around and went out. The next I saw of him he was lying on the platform, partly under the coach, right beneath where I was sitting. I did not watch him until he got off the train. After he reached the door I could not see him. The train started and had moved a short distance before it stopped."

The train porter, Sutton, on behalf of defendant, testified:

"I am employed by St. Louis & San Francisco Railroad Company as porter on passenger trains. My duties are to do the braking on the head end and look after loading of passengers. On April 28, 1911, I was working as porter on train No. 6 north-bound passenger. This is a full vestibule train. The vestibule doors are kept closed, except when stops are made at stations. When approaching Hugo, the vestibule doors are opened after we leave the water tank, which is about 300 yards south of the passenger depot. When we stop at the station I get down, place my step box, and let the passengers off. When these are off, I tell outgoing passengers to board, and while they are getting on I ask them where they go to. I do not take the grips of every passenger that gets on, but I do take the grips of any passenger that asks me to. If a lady gets on with hand baggage, I tell her to leave it, and take it back after the train leaves. Some passengers won't let me have their grips if I ask for them. I ask passengers where they are going because that train does not stop at all stations, and they might be going to some station at which we do not stop. I remember the occasion of Mr.

Isenberg being injured. When he went to get on the train I was standing at the steps. I met him about the middle of the bunch of passengers who were getting on. I did not know whether he was with any one or not. When Mr. Isenberg started to get on the train, I asked him three times, probably four, 'Where do you go to?' He never made any reply at all. He did not tell me he was not going anywhere. Never said a word to me. He had his suit case in his left hand. He did not ask me to take the grip or to assist him. It usually takes five minutes for this train to do its station work at Hugo. It is the heaviest station this side of Ft. Smith. I believe it is heavier than Paris. There are always a number of passengers to load and unload, and, in addition to this, we have the baggage and express to load and unload. On the day in question, I think the train stopped at Hugo about five minutes. It was about the usual stop. The train remained standing for about two minutes after Mr. Isenberg got on; probably two minutes and a half. A man can go from one end of the coach to the other and return in a half a minute. At the rate people move on a train, he would have had time to go to the middle of the sleeper and back again before the train started. Mr. C. L. Frear was conductor. When the train stopped, he went upstairs, and remained about two minutes. Mr. Isenberg was on the train when the conductor came down. When the conductor came down, he went toward the engine with some orders in his hand. Then he stopped along about the baggage and express. The conductor gives the signals to start, and Mr. Frear gave the signals on that day. When this signal was given, the steps were clear—nobody getting off nor on, and nobody around acting as if they intended to get on. As the train started, I got on, picked up my box, and got on the front end of the chair car. As I did so, I met Mr. Isenberg on the top step. I says: 'Wait a minute. I will stop for you.' He did not reply, and I stepped for the signal cord. I pulled the cord to stop the train, and, when I looked around, he was gone. At this time the train was moving at the rate of five or

six miles an hour. The train stopped in just a short time, and it only ran about half a car length after I gave the signal. When the train stopped, I got off, and I saw Mr. Isenberg at the far end of the chair car. A crowd was around him, helping him up. I did not get close to him."

Other evidence was introduced, but it does not change or materially affect the weight of the foregoing testimony; so it is perfectly apparent that there is a clear and positive conflict of evidence upon the controlling questions in the case—a matter peculiarly fit and proper for the jury to settle, and, according to the uniform rulings of this court, the exclusive province of the jury.

The statute makes the jury in the trial court the exclusive judges of all matters of fact, and the courts will not disturb their findings, unless it is so clearly unsupported by the testimony as to create a strong presumption that the jury was influenced by improper motives in reaching a verdict; but no such presumption can arise here.

"Where a cause is tried to a jury, and a general verdict returned, and judgment rendered on the verdict, and the evidence is conflicting and contradictory, and there is competent evidence to sustain the verdict, this court will not undertake to weigh the evidence or to determine the preponderance, but will sustain the verdict of the jury." (*Kuhl v. Supreme Lodge, S. K. & L.*, 18 Okla. 383, 89 Pac. 1126; *Grant v. Milam*, 20 Okla. 672, 95 Pac. 424; *Wade v. Cornish*, 23 Okla. 40, 99 Pac. 643.)

The rule is too well settled to require further notice. The case was fairly submitted to the jury upon all the questions of fact, material and necessary to sustain the verdict and judgment, by instruction No. 3, which is as follows:

"You are instructed that if you believe from the evidence in this case that the plaintiff went upon the defend-

ant's train for the purpose of rendering necessary assist-
ance to passengers departing upon said train, and that the
employees of the defendant did not offer to assist said
passengers in boarding said train, if you find said assist-
ance was necessary, then the plaintiff had a right to board
said train for the purpose of rendering such assistance,
and if you believe from a fair preponderance of the testi-
mony that, at the time of boarding said train, he notified
the servant of the defendant of the purpose for which he
boarded said train, and of his intention to disembark
therefrom, then it was the duty of defendant to hold said
train a reasonable length of time for plaintiff to assist
said passengers in boarding said train, and to disembark
therefrom. You are instructed, therefore, that if you find
from the evidence that plaintiff boarded said passenger
train for the purpose of rendering necessary assistance
to passengers boarding said train, and notified the ser-
vants of the defendant of his intention to disembark from
said train, and that, after boarding said train, he ren-
dered such assistance with due diligence, and undertook
to alight from said train with the exercise of due caution
upon his part, and that, while attempting to disembark
from said train, the said train was moved forward with-
out waiting a reasonable length of time for him to dis-
embark therefrom, and that, as a result of the failure to
hold said train a reasonable length of time, he was thrown
to the pavement and injured, as alleged, you should return
a verdict for the plaintiff."

Under this instruction, the jury must have found, as
a matter of fact, that the plaintiff "went to the depot for
the purpose of assisting his nephew, his wife, and two
children to board the train." They found, as a matter
of fact, that, "at the time the parties entered the train,
the nephew and wife were each carrying a child, and each
had a bundle." They found that the plaintiff "was carry-
ing their suit case," and that "the train porter was stand-

ing at the steps of the coach." And they also found that, "as the plaintiff went up the steps, the porter said to him: Q. 'Where are you going?'" And they found that the plaintiff said: "A. 'I am not going anywhere, only to help these people with these grips on the train. I will be off in a minute.'" From that the jury must have found that the plaintiff was assisting his friends, who were intending passengers, to go upon the defendant's train for the purpose of being carried from Hugo to some point in Missouri. The jury found from the circumstances and conditions of the parties, under the instruction of the court, that it was necessary for the plaintiff, or some other person, to assist the intending passengers, with their children and baggage, to embark upon the train; and that "the porter did not offer to assist the intending passengers in getting on the train"; and also that the plaintiff intended, as soon as possible, to disembark from the train, and he notified the porter of that fact. The jury found from the evidence that "the train did not stop a reasonably sufficient length of time to permit the plaintiff to perform his known duties to the intending passengers, and disembark from the train before it started;" and that the plaintiff, after delivering the grip to the parties, "started out of the car as fast as he could, to get off." They found that he was "walking out of the train hurriedly and got down on the steps," and that, when the plaintiff "reached the platform to go from the train, the porter was not there," and the vestibule door was left open, and that the plaintiff "had not seen the porter after he entered the train until he stepped off." The jury found that "the train started while the plaintiff was returning from delivering the grip, and before he reached the door of the car," and that the plaintiff "did not know the car was moving

at the time he stepped off." They found that the plaintiff exercised due care and diligence in alighting from the train, and in so doing he was thrown from the train upon the station platform and injured, and that said injuries were the result of the failure of the defendant to hold its train a reasonable length of time.

All the foregoing were facts testified to by the plaintiff, and most of which were corroborated by the nephew. We do not overlook the fact that the plaintiff's testimony is contradicted by that of the porter, but, as stated before, it was the province of the jury to weigh the evidence and determine the weight of the conflicting testimony.

"Where there is a conflict in the evidence, and the issue is submitted to the jury under proper instructions, and a motion for new trial is overruled, this court will not disturb the verdict on the weight of the evidence." *(First Bank of Hoffman v. Harrison,* 29 Okla. 302, 116 Pac. 789; *New State Grocery Co. v. Wiles,* 32 Okla. 87, 121 Pac. 252.)

"When controverted questions of fact are submitted to a jury, and the evidence adduced is conflicting and contradictory, but there is competent evidence reasonably tending to support every material allegation necessary to uphold the verdict, and the trial court approves the verdict and renders judgment in accordance therewith, and a new trial is refused, this court will not disturb the verdict of the jury and the judgment of the court on the weight of such conflicting evidence." *(Stickler v. Gitchel,* 14 Okla. 523, 78 Pac. 94; *Kuhl v. Supreme Lodge,* 18 Okla. 383, 89 Pac. 1126; *McMaster v. City Nat. Bank,* 23 Okla. 550, 101 Pac. 1103 [138 Am. St. Rep. 831]; *Armstrong Byrd & Co. v. Crump,* 25 Okla. 452, 106 Pac. 855; *Roff Oil & Cotton Co. v. Winn,* 27 Okla. 22, 110 Pac. 652; *Jeffers v. Hensley,* 28 Okla. 519, 114 Pac. 1101; *Biard v. Laumann,* 29 Okla. 140, 116 Pac. 796.)

The findings of the jury bring the case within the general rule laid down in the first paragraph of the syllabus in *St. L. & S. F. R. Co. v. Lee,* 37 Okla. 545, 132 Pac. 1072, 46 L. R. A. (N. S.) 357, wherein it is said:

"One who goes upon a train to render assistance to a passenger in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor."

We are not overlooking the long line of authorities which uphold the doctrine that it is the duty of a person entering a train for the sole purpose of assisting friends, as intending or arriving passengers, to notify the employees of the company of such intention, and, if they fail to do so, they cannot recover for injuries received in attempting to alight from a moving train, after it has started, without the usual signals or other notice to the disembarking party injured thereby. Such were the facts in the cases cited and relied upon by counsel for defendant. *M. V. R. Co. v. Bailey,* 34 Okla. 193, 124 Pac. 987; *St. L. & S. F. R. Co. v. Lee,* 37 Okla. 545, 132 Pac. 1072, 46 L. R. A. (N. S.) 357.

The rule applicable herein, and which distinguishes the instant case from the Oklahoma cases above referred to, is laid down and clearly stated in *Little Rock & F. S. R. Co. v. Lawton,* 55 Ark. 428, 18 S. W. 543, 15 L. R. A. 434, 29 Am. St. Rep. 48, in which the doctrine is in substance declared that the duties imposed by law upon carriers of passengers do not govern the conduct of the carrier toward one who enters a train, not as a passenger, but to assist a passenger. Such a person, while not a pas-

senger, is not a trespasser. In the absence of any regulation forbidding persons to enter trains for such purpose, a person who goes upon a train to assist a passenger does so under an implied permission or license; and, if notice of his intention to enter the train and return again to the station and platform is given to the company, it owes him the duty of ordinary care for his protection. *Bishop v. Ill. C. R. Co.*, 25 Ky. Law Rep. 1363, 77 S. W. 1099; *Whitley v. Southern R. Co.*, 122 N. C. 987, 29 S. E. 783; *Johnson v. Southern R. Co.*, 53 S. C. 303, 31 S. E. 212, 69 Am. St. Rep. 849; *Dillingham v. Pierce*, 31 S. W. 203; *International & G. N. R. Co. v. Satterwhite*, 15 Tex. Civ. App. 102, 38 S. W. And constructive notice of the person's intention to return to the platform has been held to be sufficient. *Morrow v. Atl. & C. Air Line Co.*, 134 N. C. 92, 46 S. E. 12; *Berry v. Louisville & Nashville R. Co.*, 109 Ky. 727, 60 S. W. 699; *Johnson v. Southern R. Co.*, and *International & G. N. R. Co. v. Satterwhite, supra.* And it is not necessary, in order to entail on the carrier the duty so to handle its train as to allow reasonable facility for a person who has entered it to assist a passenger to get off without harm to himself, that such person should first have obtained the permission of the conductor to go upon the train, where he gave notice of his intention to do so to another employee, and there was no regulation prohibiting persons from getting upon the train. *M., K. & T. Co. v. Miller*, 15 Tex. Civ. App. 428, 39 S. W. 583.

The same rule is aptly stated in Hutchinson on Carriers (3d Ed.) 991:

"A person who comes to a railroad station to assist passengers in entering or leaving the train, though not a passenger, is not a trespasser, as he comes with at least

the tacit invitation of the carrier. While so engaged, he does not stand in the relation to the carrier of a bare licensee, but is deemed to have been invited to be there by virtue of the relationship existing between the carrier and the intending or arriving passenger. The carrier therefore owes to him the duty of exercising at least ordinary care to see that he is not injured by reason of defective stational facilities or approaches thereto. So one who goes upon a train to render necessary assistance to a passenger, in conformity with a practice approved or acquiesced in by the carrier, has a right to render the needed assistance and leave the train; and the carrier, in permitting him to enter with knowledge of his purpose, is presumed to agree that he may execute it, and is bound to hold the train a reasonable time therefor. If he is injured by reason of the sudden starting of the train or the omission to give the customary signals, the carrier will be liable."

This brings us to the most difficult question in this case, viz.: Does the fact that the plaintiff alighted from the train after it had started, and while it was moving, present such a case of confessed contributory negligence as would, as a matter of law, prevent the plaintiff from recovering? It will be remembered: That the evidence shows, and the jury found, that the train had not moved to exceed 90 to 100 feet—possibly a little over a car's length. That at the time the plaintiff alighted the train was not running to exceed four or five miles an hour—probably a little faster than a man or horse could walk. Also that the plaintiff did not know the train was moving "until it was too late for him to catch himself." All these questions involving and including the question of negligence in that particular were submitted to the jury, and they found in favor of the plaintiff.

As stated in Thompson on Negligence, vol 3, sec. 3030:

"There is no law which determines whether, in a given case, a passenger or a trespasser is guilty of contributory negligence from the mere fact of attempting to alight from. a railway train in motion. We conclude therefrom that it is a question of fact for the jury in all cases, except where the negligence is so glaring and palpable that the judge is able to say that fair-minded men ought not to differ on the question. In the view of most courts, for a passenger to step from a car in the daytime, or when the station is well lighted, and the car is moving slowly opposite the platform, is not negligence, as a matter of law, but the question whether it is negligence is for the jury."

In *Louisville & N. Ry. Co. v. Crunk*, 119 Ind. 542, 21 N. E. 31, 12 Am. St. Rep. 443, the court says:

"There is no conclusive legal presumption that one who voluntarily alights from a moving train is guilty of such negligence as will defeat an action for injuries, but the question as to whether the act constitutes negligence is to be determined by the jury upon a consideration of the rate of speed the train had acquired, the place, and all the circumstances connected with the act of alighting."

Having before it the same question in *Raben v. Central Ry. Co.*, 74 Iowa, 732, 34 N. W. 621, the Supreme Court of that state lays down the same rule in the following language:

"It cannot be said, as a matter of law, independently of the statute forbidding the act, that it would be, under all circumstances, an act of negligence for a passenger to attempt to alight from a moving train; but the question is ordinarily one of fact, to be determined by the jury from all the circumstances of the case."

The case of *Chicago, etc., Co. v. Hyatt*, 48 Neb. 161, 67 N. W. 8, involved facts very similar to the case at bar. In that case the evidence showed that the plaintiff undertook to step off the car, but found that the place was muddy and not a suitable place to alight. She started to

go through the next car, which was in front of the platform, but, before she got through the next car, the train started slowly. As stated by the court:

"The train was not moving * * * faster than a person can walk. The undisputed evidence shows that it had not yet moved the length of two cars after starting, and therefore it is not probable that the train in that distance could have acquired the speed found by the jury. A careful reading and analysis of the testimony fails to disclose that plaintiff, in alighting under the circumstances, was guilty of gross negligence. She was fully justified in believing that she ran no risk of inquiry in stepping off the car. The case is analogous in its principal facts to U. P. Ry. Co. v. Porter, 38 Neb. 226 [56 N. W. 808], where" the case "was affirmed."

The question of the proximate cause of the injury was likewise in the cases from Indiana, Iowa, and Nebraska, *supra,* and the courts in those cases held against the contentions of defendant herein.

The motion for new trial presented to the mind of the writer of this opinion strong and cogent reasons why it should have been sustained, but the trial court had heard all the evidence in the case, had seen the witnesses, and was personally impressed with all the facts, conditions, and circumstances surrounding the case, and the trial thereof. He acted in the light of his knowledge of these facts. We cannot say that he erred in his judgment, or that it was error to overrule the motion.

We are not unmindful of the fact that, in affirming this case upon the findings of the jury, every presumption in favor of the plaintiff to be drawn from evidence offered in his behalf has been indulged, and the evidence introduced by him accepted as absolutely true, without any effort or attempt to weigh the conflicting testimony. That

has been left entirely to the jury, as the law so positively requires.

The case should be affirmed.

By the Court: It is so ordered.